**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

JAVIER HERNANDEZ, HECTOR HERNANDEZ, MIGUEL
PEREZ, SERGIO ROSALES CUELLO, JUVENTINO
CAZUELA, JUAN ANTONIO GARCIA, JONAS GERONIMO
DOMINGUEZ, LAZARO PEREZ RODRIGUEZ, BALDEMAR
CACHO VELEZ, AND MARCOS CACHO VELAZ,

PLAINTIFFS,

v.

**CIVIL ACTION**
**No. 02-CV-0523(S)(Sr)**

MARIA GARCIA-BOTELLO (A.K.A. "CHABELA"), ELIAS
BOTELLO, JOSE J. GARCIA (A.K.A. "JJ"), JOSE L.
GARCIA, ROGELIO ESPINOZA, ANTHONY PIEDIMONTE,
BRUCE KIRBY, DAVID PIEDIMONTE, RODNEY
WINKSTERN, FRANCIS DOMOY, STEPHEN HOWARD,
JAMES KIRBY, PHILLIP VIGNERI, RONALD E. WEILER
ROBERT VENDETTI,

DEFENDANTS.

## GROWER DEFENDANTS' ANTHONY PIEDIMONTE AND ROBERT VENDETTI OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT, OR, IN THE ALTERNATIVE, MOTION TO STRIKE PORTIONS OF PLAINTIFFS' SECOND AMENDED COMPLAINT AND PLAINTIFFS' RICO CASE STATEMENT

Defendants Anthony J. Piedimonte and Robert Vendetti ("the Grower Defendants") submit this opposition to the motion by the plaintiffs Javier Hernandez *et al.* ("the plaintiffs") to file a Second Amended Complaint filed in this action and, in the alternative, to strike portions of the Second Amended Complaint and the Plaintiff's Case Statement under the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. §1961 et seq. ("RICO").

In filing this opposition, the Grower Defendant Piedimonte and Vendetti join in the arguments made by the other eight original grower defendants and offered to the Court by their counsel, McGuiness, Norris & Williams LLP. However, this opposition to the motion simply highlights several salient objections to the Court's consideration of this second amended complaint.

## HISTORY OF THIS ACTION

### 1.    Introduction

This civil action is an outgrowth from a criminal prosecution of several of the defendants. The defendants Maria Garcia-Botello, Elias Botello, Jose J. Garcia, Jose I. Garcia and Rogelio Espinoza ("the contractor defendants") were individuals who worked, either individually or collectively, as contractors who provided labor to farmers in the western New York region. These individuals were the subject of an indictment by a federal grand jury.

However, importantly, there was no criminal action brought against either Piedimonte or Vendetti or any other of the grower defendants.

This civil action was commenced by the filing of the complaint on July 22, 2002 – more than three years ago. Less than two weeks later and prior to any answers being filed by any of the defendants, the plaintiffs changed their minds and elected to file a first amended complaint, which they later withdrew.

2

## 2.    Stay of the Civil Proceeding

However, because the criminal action was pending against the contractor defendants, the United States Department of Justice ("DOJ") intervened in the civil case and asked for a stay of the civil case until completion of the criminal trial.   In September, 2003 – more than a year after the filing of the original complaint and without answers filed by the grower defendants – this court stayed the civil proceedings until completion of the criminal matter.

## 3.    The Criminal Action and its Resolution

During the course of the criminal investigation, Piedimonte and Vendetti cooperated with the federal government investigation and trial preparation.   Defendant Piedimonte met with federal prosecutors and produced reams of documents related to the contractor defendants and the use of contractor laborers on his farm during the periods in the late 1990s until 2003.   During this process, no one from the federal government – neither the Justice Department nor the Department of Labor's Wage and Hour Division – ever suggested that Piedimonte had ever violated any federal or state laws or regulations regarding the use of contract labor during the period from 1998 through 2004.   No one ever suggested – in writing or otherwise -- that either Piedimonte had any financial liability to any of the plaintiffs or any members of any putative class of injured farmworkers in the pending civil action.

3

Importantly, throughout the investigation by the Department of Justice, no one in the Department of Justice or the federal Department of Labor claimed or even suggested – as the amended complaint now seeks to allege -- that Piedimonte or Vendetti:

(a)     had entered into an agreement of any type or nature in which they "conspired" with the contractor defendants to further the goals of violating any state or federal law;

(b)     had entered into an agreement of any type or nature in which they conspired to "commit or further alleged racketeering activity;"

(c)     had entered into an agreement in which they engaged in a "criminal worker-exploitation scheme" in which they paid farmworkers less than the average hourly rate paid to farm labor in New York in 2001; and

(d)     had an obligation to require the contractor defendants to "cease their commission of a pattern of racketeering activity."

In December, 2004, the contractor defendants entered plea agreements relating to their conduct.   The contractor defendants accepted responsibility for their conduct to several of the named plaintiffs in this case. The Court imposed sentences, including an order of restitution.  However, in the wake of the resolution of the criminal case, the following facts are undisputed:

(a)     because federal law provides for mandatory restitution for trafficking victims, the Justice Department had a legal obligation to find as many victims of the contractor defendants' criminal conduct as it thought existed;

(b)     the prosecutor in the case, in commenting on the restitution part of the proposed sentence for the offenders and after reviewing all of the government's proof in a letter dated May 13, 2005 to the United States Probation Department, noted that the only "victims" of the conduct of contractor defendants' illegal conduct were the following:

(i)     Javier Hernandez, Hector Hernandez, Juan Antonio Garcia and Sergio Rosales, who were each owed $249.78 based on a "assumed conservative amount of 10 hours per day" that remained unpaid by the contractor defendants;

(ii)    Lazaro Perez Rodriquez, Marcos Cacho Velaz, Baldemar Cacho Velaz, Jonas Geronimo, Bonifaco Perez and Daniel Victoria, based on the "assumed 10 hours per day," were owed $772.50 each;

(iii)   there was no suggestion by the chief prosecutor in the criminal case  that there were any other "victims" or that anyone else lost wages or were otherwise harmed by the contractor defendants, leading to the inescapable conclusion that the Department of Justice had discovered the only "known or knowable victims" of the contractor defendants' actions;

(c)     the federal probation department, in its pre-sentence investigation and after reviewing all the proof in this case and interviewing employees and attempting to

5

contact all the alleged victims of the contractor defendant's conduct, said there was proof that contractor defendant Maria Garcia had damaged one other person and that she owed Javier Hernandez Sanchez a total of $257.50 because he apparently was not paid at all;

(d)     the federal probation department, in its pre-sentence investigation and after reviewing all the proof in this case and interviewing employees and attempting to contact all the alleged victims of the contractor defendant Elias Botello's conduct, concluded that it could identify five victims of his conduct and concluded Miguel Perez, Javier Hernandez Sanchez, Hector Hernandez Sanchez, Juan Antonio Garcia and Sergio Rosales Cuello suffered lost wages in the amount of $257.50 each for a total of $1,287.50; and,

(e)     the federal probation department, in its pre-sentence investigation and after reviewing all the proof in this case and interviewing employees and attempting to contact all the alleged victims of the criminal defendants' conduct regarding the "Group 2" workers (identified in the second amended complaint as the Herman Camp victims) concluded that it could only identify six other victims of his conduct and concluded Lazaro Perez Rodriquez, Marcos Cacho Velaz, Baldemar Cacho Velaz, Jonas Geronimo, Bonifaco Perez and Daniel Victoria suffered lost wages in the amount of $772.50 each for a total of $4,635.00.

6

The restitution order required the contractor defendants to reimburse injured farmworkers in the amount of $6,180, which represented all the damages sustained by identifiable victims of the contractor defendant's illegal conduct.

In the wake of the resolution of the criminal complaints, neither the Department of Justice nor the Federal Wage/Hour Division took any actions against Piedimonte. Despite that fact that these federal agencies have statutory authority to investigate and remediate cases involving violations of the federal wage protection laws, neither took any action against Piedimonte, even though both agencies had full access to Piedimonte's records regarding his use of farmworker labor during the relevant period of this case.

Shortly after the criminal defendants were sentenced, the Court, on June 2, 2005, issued an order vacating the previously issued stay. After extended discussions with the Court and all counsel failed to resolve this matter, the plaintiffs filed their motion for leave to file the second amended complaint.

## THE NATURE OF THE SECOND AMENDED COMPLAINT

While the second amended complaint adds claims and facts in the case against the contractor defendants, new plaintiffs and other factual allegations, Piedimonte is primarily concerned with the assertion of new claims under civil RICO against him.

### 1.   The second amended complaint fails to meet the requirement of Rule 15 with respect to the civil RICO claims against Piedimonte

While leave to amend a pleading shall be freely granted when justice so requires, amendment is not warranted in the case of, among other things, "futility, bad faith, undue

7

delay, or undue prejudice to the opposing party." Fed. R. Civ. P. 15(a), *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999) (a district court may properly deny leave when amendment would be futile); *Henry v. DOT*, 69 Fed. Appx. 478, 2003 U.S. App. LEXIS 12932 (2003); *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) ("undue delay and futility of the amendment, among other factors, are reasons to deny leave"). A proposed amendment to a pleading is also futile if it can not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *McKinney v. Eastman Kodak Co.*, 975 F.Supp. 462, 465 (W.D.N.Y. 1997); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

### (a) The Civil RICO claim is time barred.

The plaintiff's civil RICO claims, alleged against defendant Piedimonte, are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156, (1987). The limitations period begins to run when plaintiffs discover or should have discovered their RICO injury. *Radin v. Albert Einstein College of Med. of Yeshiva Univ.*, 2005 U.S. Dist. LEXIS 9772 (S.D.N.Y. May 20, 2005).

In this case, the time of the injury, as alleged in the plaintiff's complaint, is undisputed: the claims relate to the time period of July and August, 2001.  If the allegations of the plaintiff's second amended complaint are accepted as true, then the

8

plaintiffs sustained an injury – non-payment of wages or other injuries – on or before those dates.

Apparently cognizant of the looming statute of limitations bar, the plaintiffs, in their second amended complaint, coyly refuse to pinpoint the dates of the alleged RICO violations by the grower defendant Piedimonte. The RICO claims against Piedimonte are made in paragraphs 171 through 189 of the second amended complaint. In these paragraphs alleging facts to support their claims, the plaintiffs allege the following regarding the timing of the alleged violations:

(a)      the contractor defendants were engaged in RICO enterprise "at least from 1995 to 2001;" ¶173;

(b)      the grower defendants paid "sub-market rates" during 2001. ¶s 180-181.

In the later causes of action plead in the second amended complaint, there are also no particular dates alleged when Piedimonte violated RICO. *See* Third Cause of Action, ¶s 214-220; Fourth Cause of Action, ¶s 221-225.

In fact, the only dates referenced in the entire complaint are dates in July and August 2001.[1] The predicate acts by the Contract defendants, alleged in the second amendment complaint, all occurred before August 22, 2001. *See* ¶s143-173.

---

[1]      There is only one date in the complaint later than August 2001. In paragraph 137 of the second amended complaint, the plaintiffs allege that plaintiff Agustin San Juan worked for two of the grower defendants from May through November 2001. But, there is no allegation that any criminal enterprise was part of the treatment of Mr. Agustin.

9

The plaintiffs, subjected to the alleged criminal actions of the contractor defendants, must have known that their injuries occurred in August, 2001. The plaintiffs allege they were denied their earned salaries, intimidated, kidnapped and otherwise wronged before the end of August 2001. There can be no question that the statute of limitations for any civil RICO claims accrued in late August 2001.

Critically, there is no allegation – in the 268 paragraphs of the second amended complaint – that any violations of RICO occurred after August, 2001. There is no allegation that any conspiratorial conduct occurred after that date.

The purposeful ambiguity created by the plaintiff's counsel regarding the accrual of the statute of limitations is also not resolved by the RICO Case Statement, filed simultaneously with the complaint. In that document, the plaintiff's counsel provides no greater details regarding the dates of the alleged RICO-related conspiratorial acts of the defendant Piedimonte or any other defendant. In its allegations against the contractor defendants, the RICO Case Statements refers only to "July and August 2001." *See* RICO Case Statement, ¶5. In its description of the "RICO Enterprise" involving defendant Piedimonte, the Statement makes no references to dates. *Id*. ¶6.

In short, the plaintiffs, in their second amended complaint and accompanying RICO Statement, cannot point to any predicate acts or any conspiratorial activities that occurred *after* August 2001.

10

The amended complaint was filed on October 7, 2005, more than four years after the last alleged acts of the grower defendant Anthony Piedimonte.  The statute of limitations had already expired when the second amended complaint was filed and it is futile to amend the complaint under these circumstances.

**(b)     The RICO claims do not relate back to the first complaint**

In the face of a time-bar by the statute of limitations, the plaintiffs can only find succor in a claim that the Civil RICO claims against Piedimonte "relate back" to the filing of the original complaint.

Rule 15(c) provides that "an amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ." Fed. R. Civ. P. 15(c)(2).

For the civil RICO claims in this case to relate back to the original complaint, the basic RICO claim must have arisen out of the conduct set forth in the original pleading. *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 35(2d Cir. 2002), (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986) ; *see also Iragorri v. United Techs. Corp.*, 285 F. Supp. 2d 230 (D. Conn. 2003); *Benfield v. Mocatta Metals Corp.*, 26 F.3d 19, 23 (2d Cir. 1994) (relation-back doctrine applies where there is "sufficient commonality" between acts alleged in the original complaint and the proposed amendments, and where the proposed amendments would require "evidence of the same or similar wrongful acts

11

and the testimony of the same or similar witnesses as would proof of [the original claims]").    The pertinent inquiry is whether the original complaint gave the defendant fair notice of the newly alleged claims. *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998); *Benfield v. Mocatta Metals Corp.*, 26 F.3d at 23 (finding that for relation back doctrine to apply, "there must be a sufficient commonality" to preclude a claim of "unfair surprise").

In this case, there was never an allegation in the original complaint that the defendants engaged in any conspiracy or other RICO-related scheme or conduct.    The original complaint set forth detailed allegations against the grower defendants; i.e., that they were joint employers and violated the state and federal wage laws and other statutes. *See* Original Complaint, Claims under Fair Labor Standards Act 29 U.S.C. § 206 et seq., ¶s 93-97; Claims under the Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. § 1801 et seq., ¶s114-116; common law breach of contract claims.  ¶s 128-130.

The original complaint, however, did not give the defendant Piedimonte notice that his conduct involved an agreement with the contractor defendants and, hence, constituted a conspiracy to violate state and federal wage laws.  There was no suggestion in the original complaint that Piedimonte had an agreement – either implicit or explicit -- with the contractor defendants to violate those laws.  There was also no suggestion in the original complaint that he was responsible – in any fashion – for the predicate acts

12

alleged against the contractor defendants: extortion, involuntary servitude, forced labor, wire fraud, larceny and kidnapping.

Under these circumstances, there is no "commonality" between the acts alleged in the original complaint – failure to pay wages consistent with the state and federal wage laws – and the acts alleged in the second complaint – conspiracy to profit from criminally unlawful acts such as extortion, involuntary servitude, forced labor, wire fraud, larceny and kidnapping.

Because there is no "commonality" between the allegations against Piedimonte in the original complaint and the civil RICO allegations in the second amended complaint, this amendment to add those claims does not relate back to the original complaint, the claims asserted in the second amended complaint remain time barred and the entire amendment to add civil RICO claims against Piedimonte is futile.

### 2.    The proposed second amended complaint unduly prejudices defendant Piedimonte

Under Rule 15, this court can consider the extent of the prejudice to defendant Piedimonte is determining whether to permit the amended complaint. In this case, the prejudice is enormous.

In determining what constitutes "prejudice," the courts in the Second Circuit generally consider whether the assertion of the new claim or defense would:

> (i)    require the opponent to expend significant additional resources to conduct discovery and prepare for trial; or,

13

      (ii)     significantly delay the resolution of the dispute.

*Monahan v. New York City Dept. of Corrections*, 214 F.3d 275 (2d Cir. N.Y. 2000).

Under this test, defendant Piedimonte will be substantially prejudiced if the amendment is granted. First, the plaintiffs, in seeking this amendment to the complaint, misapply the prejudice concept under Rule 15(a). In their motion, they claim there is no prejudice because this second amended complaint has been brought "at the earliest stages of this litigation." *Memorandum of Law in Support of Plaintiff's Motion for Leave to amend the Complaint, p. 3* ("*Plaintiff's Memorandum*"). While the statement is accurate regarding the procedural history of this case, it is inaccurate when analyzed chronologically. The first complaint was filed more than three years ago. The stay was lifted more than five months ago. The second amended complaint seeks to add allegations involving conduct that is more than four years dated. The witnesses who experienced and can testify to the alleged wrongdoing are all four years removed from the events.

Second, under the original complaint, defendant Piedimonte was required only to defend his own conduct in the case including his status as a possible joint employer, his payroll practices, his knowledge of and compliance with the state and federal payroll laws. In the second amended complaint, significant new facts would be subject to investigation including the relationship between the contractor defendants and Piedimonte, Piedimonte's actual knowledge of the alleged unlawful acts of the contractor

14

defendants and Piedimonte's reaction to these unlawful acts. Under the RICO allegations in the amended complaint, Piedimonte will be required to defend the acts of others and, in each instance, prove that he was not aware of nor complicit in their unlawful conduct. In short, the scope – and cost -- of his defense is substantially expanded if this motion is granted.

From this perspective, the second amended complaint in this case adds a radical departure from the theory of liability for all the grower defendants asserted in the original complaint. Other courts have held that a change in the "entire theory of the case" constitutes undue prejudice to the defendants. *See Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 58-59 (2d Cir. 1984) (upholding district court's denial of leave to amend complaint to effect "a radical shift" in theory of recovery). By seeking to serve this second amended complaint, plaintiffs are changing their theory from a common law/statutory violation theory to a civil conspiracy theory under RICO.

Third, Piedimonte's defense is further compromised because he will be linked, by allegation, with admitted criminals. The contractor defendants have already admitted violations of federal laws and, through the civil RICO claims, the plaintiffs seek to taint Piedimonte and severely damage his defense by linking him to their criminal conduct. The "admitted" conduct of the contractor defendants – which federal investigators never linked to Piedimonte – will be used against him at trial. The addition of the RICO claims

15

will greatly impact Piedimonte's ability to have a fair trial and will lead to a motion for a severance of the trial, which will delay the resolution of the trial.

Fourth, the delay in offering this amendment to assert the RICO claims has also damaged Piedimonte's ability to gather evidence to defend himself. The plaintiffs in this case – and any members of the class – have been unavailable to defendant Piedimonte during the last four years. He has not been able to conduct any investigation of the alleged conspiracy during that time. He has been denied the ability to interview potential witnesses and gather information in his defense. Now, four years later, he will be forced to gather information to defend his actions with the real prospect that exculpatory witnesses may not be found. If the plaintiffs had brought the RICO claims in 2002 – when the complaint was first filed – Piedimonte would have been to begin to assemble the facts necessary for his defense. The delay in bringing the claims will prejudice his ability to defend himself.

Fifth, there is no excuse for the plaintiff's delay in asserting these claims. The plaintiffs alleged RICO claims against the contractor defendants in the original complaint. *See* Original Complaint, ¶4; Fourth Cause of Action, ¶s 117-121. The plaintiffs could have easily alleged RICO claims against the grower defendants, including Piedimonte, in the original complaint but neglected to do so. There is no suggestion – in the amended complaint, the RICO statement or the motion papers in support of the amendment – that the plaintiffs discovered new facts which led them to conclude that

16

RICO claims were appropriate against Piedimonte.  The plaintiffs knew the facts of Piedimonte's involvement back in 2002, when the original complaint was first filed. Yet, the plaintiffs have waited until this late moment to raise the specter of civil RICO claims against Piedimonte.  The prejudice of this last-second assertion of claims with mammoth new liabilities and proof issues should not be countenanced.

Sixth, the plaintiffs contend in their documents before the Court that "they have alleged _facts_ to establish that RICO Conspiracy Grower defendants (including Piedimonte) adopted the goals of furthering, facilitating and providing support for Contract growers criminal workers exploitation scheme." _See Plaintiff's Memorandum,_ p. 11, ¶1(_Emphasis added_).  However, contrary to this suggestion, there are no factual allegations in the second amended complaint to support this conclusion.  The second amended complaint simply states, upon information and belief:

(a)    the RICO Conspiracy Grower Defendants "adopted the goals of furthering, facilitating and providing support for the Contractor defendants;" Second Amended Complaint, ¶175;

(b)    the RICO Conspiracy Grower Defendants "knew or should have known" that the Contractor Defendants were committing predicate acts, ¶176 ;

(c)    the RICO Conspiracy Grower Defendants had authority to tell the Contractor Defendants to cease these acts but failed to do so, ¶177 ;

17

(d)   the RICO Conspiracy Grower Defendants "knowingly increased their profit margins by furthering" the criminal enterprise, ¶178;

(e)   the RICO Conspiracy Grower Defendants "knew that a sub-market rate" could not have existed without the criminal worker scheme, ¶182; and,

(f)   the RICO Conspiracy Grower Defendants "aided and abetted" the criminal exploitation scheme by failing to detect fraudulent social security cards or other documents and issuing paychecks for work performed by workers in the name of a single worker. ¶s 184-188.

Strangely, there are no specific facts alleged in this cause of action: no dates, no times, no individuals, no specific case, no specific agreements or conversations, no indication of what Piedimonte knew or should have know, no allegations of whether information was communicated to Piedimonte or any other Conspiracy Grower defendant by the contractor defendants.   In short, there are simply "conclusory allegations" and no specific factual statements to support the broad civil RICO cause of action against Piedimonte.

Finally, the RICO claim against Piedimonte is purely motivated by a desire to punish Piedimonte and pressure him into a settlement.  The damages available under RICO must be understood against the already severe penalties under the claims pled in the original complaint: the Fair Labor Standards Act (liquidated damages); the Migrant and Seasonal Worker Protection Act (statutory damages for violations); and, the New

18

York Labor Law (statutory penalties and attorneys fees). The injured workers in this case already have a panoply of remedies under state and federal law that will more than adequately compensate them for any wrongdoing by Piedimonte, if they can prove their case under these statutes. The RICO claims substantially expand Piedimonte's liability without any tangible benefit to the plaintiffs.

For all these reasons, Piedimonte will be substantially prejudiced by the proposed amendment to this complaint and the motion to amend should be denied.

### THE CROSS-MOTION TO STRIKE PORTIONS OF THE COMPLAINT AND RICO STATEMENT SHOULD BE GRANTED

In the papers submitted by co-defendant counsel, the co-defendants seek dismissal of certain paragraphs of the second amended complaint and rejection of the plaintiff's attempt to add new parties to this case. Defendants Piedimonte and Vendetti join those portions of the co-defendants' motion.

However, Piedimonte also demands that the references to payment of "sub-market rates" set forth in paragraphs 181 and 182 of the complaint and on page 11 of the RICO statement be similarly struck from the complaint and the RICO statement. The plaintiffs can not point to any statute, law, rule or regulation that required Piedimonte – or any of the grower defendants – to pay "market rates" to the plaintiffs. The fact that Piedimonte or other growers might have paid less than the New York State market rate for wages to the plaintiffs does not violate any state or federal rule or regulation. For these reasons,

19

this fact – even if true – cannot provide the basis for any claim against the defendant Piedimonte and it should be struck from the complaint and the RICO Statement.

## CONCLUSION

For the reasons set forth herein, the motion to file a second amended complaint should be denied or, in the alternative, the disputed portions of the complaint should be stricken.

DATED:      November 11, 2005
            Rochester, New York

                           UNDERBERG & KESSLER LLP


                           _____
                           Richard A. Dollinger, Esq.
                           Attorneys for Defendant Anthony Piedimonte
                           300 Bausch & Lomb Tower
                           Rochester, New York  14604
                           Telephone:  (585) 258-2818

20

TO:    Daniel Werner, Esq.
        Attorney for the Plaintiffs
        Workers Rights Law Center of New York, Inc.
        101 Hurley Avenue, Suite 5
        Kingston, New York   12401

        Anita Butera, Esq.
        FARMWORKER LEGAL SERVICES OF
           NEW YORK, INC.
        Attorneys for Plaintiffs
        80 St. Paul Street, Suite 620
        Rochester, New York 14604

        Monte B. Lake, Esq.
        Natalie Brouwer, Esq.
        MCGUINESS, NORRIS & WILLIAMS, LLP
        1015 Fifteenth Street, N.W., Suite 1200
        Washington, D.C.   20005

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of November, 2005, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to each of the following:

Daniel Werner, Esq.

Farmworker Legal Services of New York, Inc.

52 S. Manheim Boulevard
New Paltz, New York 12561

Sean Dennis Hill, Esq.
Hill & McReady
6 N. Pearl St.
Buffalo, New York 14202

John J. Lavin, Esq.
524 Brisbane Building
Buffalo, New York 14203

Monte B. Lake, Esq.
Natalie Brouwer, Esq.
MCGUINESS, NORRIS & WILLIAMS, LLP
1015 Fifteenth Street, N.W.
Suite 1200
Washington, D.C.   20005

Richard A. Dollinger, Esq.