UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAVIER HERNANDEZ, HECTOR HERNANDEZ,
MIGUEL PEREZ, SERGIO ROSALES CUELLO,
JUVENTINO CAZUELA, JUAN ANTONIO GARCIA,
JONAS GERONIMO DOMINGUEZ, LAZARO PEREZ
RODRIGUEZ, BALDEMAR CACHO VELEZ, MARCOS
CACHO VELEZ, DANIEL VICTORIA LEON, and
AGUSTIN SAN JUAN, On Behalf of Themselves, and All
other Similarly Situated Persons,

**CLASS ACTION**

Case No. 02-CV-0523(S)(Sr)

Plaintiffs,

v.

MARIA GARCIA-BOTELLO (a.k.a. "Chabela"), ELIAS
BOTELLO, JOSE J. GARCIA (a.k.a. "JJ"), JOSE I.
GARCIA, ROGELIO ESPINOZA, ANTHONY
PIEDIMONTE, BRUCE KIRBY, DAVID PIEDMONT,
RODNEY WINKSTERN, DEL MAR FARMS, INC.,
FRANCIS DOMOY, STEPHEN HOWARD, HOWARD
PRODUCE SALES, INC., JAMES KIRBY, PHILIP
VIGNERI, PATSY VIGNERI & SONS, INC., RONALD
E. WEILER d/b/a RONCLAR FARMS, ROBERT
VENDETTI, PENNA'S FARMS, NICHOLAS PENNA,
MARKY'S & SONS, INC., JOHN J. KASMER FARM,
LLC, ROOTS BROTHERS FARMS, NORMAN FARMS,
JIM NORMAN, CAROLYN NORMAN, HEARNES
PRODUCE, JOHN HEARNES, ELIZABETH HEARNES,
SAFFOLD FARMS, BILL SAFFOLD, JIM BRADWELL,
PICKLE BOB, TAYLOR, GUSTAVO, and RODNEY &
SUE,

Defendants.

## SECOND AMENDED COMPLAINT

Plaintiffs allege upon knowledge as to themselves and their acts, and upon information

and belief as to all other matters, as follows:

-1-

## PRELIMINARY STATEMENT

1.      In 2004, Defendants MARIA GARCIA-BOTELLO (a.k.a. "Chabela") and ELIAS

BOTELLO pled guilty to forced labor in violation of 18 U.S.C § 1589 and Defendants JOSE J.

GARCIA (a.k.a. "JJ") and JOSE I. GARCIA pled guilty to harboring illegal aliens in violation of

8 U.S.C. § 1324(a)(1)(A)(iii).  These guilty pleas were premised on evidence establishing a

pattern of recruiting undocumented field workers near the U.S.-Mexican border to work on farms

in western New York State.  MARIA GARCIA-BOTELLO and the other convicted criminals

provided these workers to farms at wages far below the prevailing market wages for the grueling,

back-breaking work of picking squash, pumpkins, cucumbers and other crops.

2.      MARIA GARCIA-BOTELLO and other Defendants intentionally sought out

undocumented field workers -- many of whom did not speak English -- because they knew that

they would be better able to take advantage of people who would be fearful of American

government authorities.  Once they had convinced these workers to travel with them from the

U.S.-Mexican border to New York State, MARIA GARCIA-BOTELLO and her criminal co-

conspirators imposed extraordinary and unreasonable fees on these workers for "transportation"

and other debts, effectively instituting a system of debt peonage.

3.      None of the workers received the compensation they were entitled to under state and

federal laws or under their agreements with the Defendants.  In fact, some of the workers were

not paid at all.  They were housed at labor camps in horrendous conditions.  In some cases,

eleven men and boys were placed in a single room with only three beds.  Often, they had no food

or water.  When they complained, they were threatened and, in some cases, physically assaulted.

MARIA GARCIA-BOTELLO and her fellow criminal co-conspirators spoke frequently in front of the workers about weapons and warned them that they would be hunted and beaten if they attempted to escape. When workers did leave the squalid living conditions at the labor camps, sometimes to escape, other times just to seek food, she and those working with her would track them down.

4.      In this action, Plaintiffs and class members seek to recover unpaid wages and other damages from MARIA GARCIA-BOTELLO, from her fellow convicted criminal co-conspirators, and from the growers who benefitted from their conduct. In some cases, the growers joined in the scheme by facilitating or concealing the conduct of MARIA GARCIA-BOTELLO and her crew. In other cases, the growers did nothing to report or disclose their conduct to the authorities. In all cases, the growers failed to comply with their legal obligations as joint employers of the Plaintiffs and class members to ensure that they were paid the wages they were entitled to receive.

## INTRODUCTION

5.      This is a class action brought by twelve migrant farmworkers, JAVIER HERNANDEZ, HECTOR HERNANDEZ, MIGUEL PEREZ, SERGIO ROSALES CUELLO, JUVENTINO CAZUELA, JUAN ANTONIO GARCIA, JONAS GERONIMO DOMINGUEZ, LAZARO PEREZ RODRIGUEZ, BALDEMAR CACHO VELEZ, MARCOS CACHO VELEZ (hereinafter "Plaintiffs I"), DANIEL VICTORIA LEON AND AUGUSTIN SAN JUAN (hereinafter "Plaintiffs II," and collectively "Plaintiffs"), and similarly situated class members.

6.      Plaintiffs were held in debt peonage by farm labor contractors MARIA GARCIA-BOTELLO, ELIAS BOTELLO, JOSE J. GARCIA, JOSE I. GARCIA, and ROGELIO ESPINOZA (hereinafter "Contractor Defendants").  Plaintiffs and/or other class members were jointly employed by local farmers and farms ANTHONY PIEDIMONTE, BRUCE KIRBY, DAVID PIEDMONT, RODNEY WINKSTERN, DEL MAR FARMS, INC., FRANCIS DOMOY, STEPHEN HOWARD, HOWARD PRODUCE SALES, INC., JAMES KIRBY, PHILIP VIGNERI, PATSY VIGNERI & SONS, INC., RONALD E. WEILER d/b/a RONCLAR FARMS, ROBERT VENDETTI (hereinafter "Grower Defendants A"), PENNA'S FARMS, NICHOLAS PENNA, MARKY'S & SONS, INC., JOHN J. KASMER FARM, LLC, ROOTS BROTHERS FARMS, NORMAN FARMS, JIM NORMAN, CAROLYN NORMAN, HEARNES PRODUCE, JOHN HEARNES, ELIZABETH HEARNES, SAFFOLD FARMS, BILL SAFFOLD, JIM BRADWELL, PICKLE BOB, TAYLOR, GUSTAVO, and RODNEY & SUE (hereinafter "Grower Defendants B" and, with "Grower Defendants A" and "Contractor Defendants," collectively "Defendants").

Plaintiffs file this lawsuit as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) for all claims other than Assault and those claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.  Plaintiffs file this lawsuit as a representative action for claims brought under the FLSA.

6.      Defendants routinely failed to pay the Plaintiffs and/or others the federal and state minimum wage, as required by the FLSA and Article 19 of the New York State Labor Law and its implementing regulations.

7.     Defendants engaged in multiple violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 et seq. These include: (1) failing to disclose in writing the terms and conditions of employment at the time of recruitment; (2) providing false and misleading information to the Plaintiffs and others at the time or recruitment; (3) failing to comply with a working arrangement entered into with the Plaintiffs; (4) failing to provide the Plaintiffs and others with accurate wage statements; (5) failing to maintain accurate payroll records; (6) failing to pay the Plaintiffs for all the hours they worked; and (7) transporting the workers in unsafe vehicles without adequate insurance. The Contractor Defendants engaged in further violations of the AWPA, 29 U.S.C. § 1801 et seq., including: (1) housing the Plaintiffs and others at dilapidated and overcrowded labor camps; (2) failing to post required information at the labor camps; and (3) failing to register as a farm labor contractor. The Grower Defendants also further violated the AWPA, 29 U.S.C. § 1801 et seq., by securing the services of unregistered and/or improperly registered farm labor contractors.

8.     Contractor Defendants also engaged in a pattern of racketeering activity in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq., and held Plaintiffs and other class members in debt peonage and involuntary servitude in violation of the Thirteenth Amendment of the United States Constitution, 18 U.S.C. § 1581, 18 U.S.C. § 1584, 18 U.S.C. § 1589, 42 U.S.C. § 1994, and the Alien Torts Claims Act, 28 U.S.C. § 1350.

9.     Grower Defendants ANTHONY PIEDIMONTE, HOWARD PRODUCE SALES, INC., PATSY VIGNERI & SONS, INC., DAVID PIEDMONT ("RICO Conspiracy Grower

Defendants") with the Contractor Defendants conspired to violate the RICO, in violation of 18 U.S.C. § 1962(d).

10.     All Defendants failed to comply with the terms and conditions of employment promised to the Plaintiffs and/or other class members in violation of New York State Contract Law.

11.     All Defendants made unauthorized deductions from the wages of Plaintiffs and/or other class members in violation of the wage deduction provisions of Article 6 of New York State Labor Law.

12.     Contractor Defendants also committed Fraud, False Imprisonment and Intentional Infliction of Emotional Distress against Plaintiffs and other class members.

13.     Contractor Defendants also assaulted six of the Named Plaintiffs.

## JURISDICTION

14.     The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1854(a), this action arising under the AWPA; by 18 U.S.C. § 1964, this action arising under the RICO; by 29 U.S.C. § 216(b), this action arising under the FLSA; by 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce; and by 28 U.S.C. § 1331, this action involving questions of federal law.

15.     Supplemental jurisdiction over state law claims is conferred upon this Court by 29 U.S.C. § 1367(a) as the state law claims arise out of the same nucleus of facts which support the federal claims.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1854(a). Upon information and belief, Defendants' unlawful employment practices were committed

throughout the Western District, and the Defendants resided in the Western District at all relevant times.

## PARTIES

Plaintiffs

17.   Plaintiffs were employees of the Contractor Defendants and, upon information and belief, some or all of the Grower Defendants on one or more occasions in July and August 2001.

18.   At all relevant times, Plaintiffs were migrant agricultural workers within the meaning of the AWPA, 29 U.S.C. § 1802(10)(A).  At all times relevant to this action Plaintiffs were employed in agricultural employment of a seasonal or other temporary nature and were required to be absent overnight from their permanent places of residence.

19.   At all relevant times, Plaintiffs were engaged in agricultural employment within the meaning of the AWPA, 29 U.S.C. § 1802(3).

20.   At all relevant times, Plaintiffs were employed in the production of goods for sale in interstate commerce.

21.   At all relevant times, Plaintiffs were employees of Contractor Defendants, and upon information and belief, some or all of the Grower Defendants within the meaning of the FLSA.

22.   At all relevant times, Plaintiffs were "person[s]" within the meaning of the RICO, 18 U.S.C. § 1961.

Defendants

23.   At all relevant times, Defendants were agricultural employers within the meaning of the AWPA, 29 U.S.C. § 1802(2).

24.     At all relevant times, Contractor Defendants MARIA GARCIA-BOTELLO, ELIAS BOTELLO, JOSE J. GARCIA, JOSE I. GARCIA, and ROGELIO ESPINOZA, were farm labor contractors within the meaning of the AWPA, 29 U.S.C. § 1802(7).  For a fee, the Contractor Defendants recruited, solicited, hired, transported, and housed Plaintiffs and other class members.

25.     Contractor Defendants regularly do business within the Western District of New York.

26.     At all relevant times, the Contractor Defendants employed the Plaintiffs and other class members.

27.     At all relevant times, the Defendants were "person[s]" within the meaning of the RICO, 18 U.S.C. § 1961.

28.     At all relevant times, the Defendants were engaged in an industry affecting commerce.

29.     Upon information and belief, Defendants are likely to employ the Plaintiffs and/or other class members during future seasons.

30.     Upon information and belief, the Defendants engage in some or all of the following operations: growing, harvesting, grading, processing, packaging, repackaging, and selling fruit and vegetables.

31.     Upon information and belief, Defendant ANTHONY PIEDIMONTE, of Holley, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

32.     Upon information and belief, Defendant BRUCE KIRBY, of Albion, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

33.     Upon information and belief, Defendant RODNEY WINKSTERN, of Batavia, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

34.     Upon information and belief, Defendant DAVID PIEDMONT, of Holley, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

35.     Upon information and belief, Defendant FRANCIS DOMOY, of Oakfield, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

36.     Upon information and belief, Defendant STEPHEN HOWARD, of Fancher, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

37.     Upon information and belief, Defendant JAMES KIRBY, of Albion, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

38.     Upon information and belief, Defendant PHILIP VIGNERI, of Elba, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

39.    Upon information and belief, Defendant RONALD E. WEILER d/b/a RONCLAR FARMS, of Batavia, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

40.    Upon information and belief, Defendant RONALD E. WEILER regularly did business as RONCLAR FARMS.

41.    Upon information and belief, Defendant ROBERT VENDETTI, of Albion, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

42.    Upon information and belief, Defendant DEL MAR FARMS, INC. of Batavia, New York was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

43.    Upon information and belief, Defendant HOWARD PRODUCE SALES, INC. of Fancher, New York was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

44.    Upon information and belief, Defendant PATSY VIGNERI & SONS, INC. of Hornell, New York was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

45.    Upon information and belief, Defendant PENNA'S FARMS, of Holley, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

46.     Upon information and belief, Defendant NICHOLAS PENNA, of Holley, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

47.     Upon information and belief, Defendant MARKY'S & SONS, INC., of North Tonawanda, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

48.     Upon information and belief, Defendant JOHN J. KASMER FARM, LLC, of Elba, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

49.     Upon information and belief, Defendant ROOTS BROTHERS FARMS, of Albion, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

50.     Upon information and belief, Defendant NORMAN FARMS, of Kendall, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

51.     Upon information and belief, Defendant JIM NORMAN, of Kendall, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

52.     Upon information and belief, Defendant CAROLYN NORMAN, of Kendall, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

53.     Upon information and belief, Defendant HEARNES PRODUCE, of Orleans, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

54.     Upon information and belief, Defendant JOHN HEARNES, of Orleans, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

55.     Upon information and belief, Defendant ELIZABETH HEARNES, of Orleans, New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

56.     Upon information and belief, Defendant SAFFOLD FARMS, of New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

57.     Upon information and belief, Defendant BILL SAFFOLD, of New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

58.     Upon information and belief, Defendant JIM BRADWELL, of New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

59.     Upon information and belief, Defendant PICKLE BOB, of New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

-12-

60.    Upon information and belief, Defendant TAYLOR, of New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

61.    Upon information and belief, Defendant GUSTAVO, of New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

62.    Upon information and belief, Defendant RODNEY & SUE, of New York, was an employer or joint employer of Plaintiffs and/or class members within the meaning of the 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).

63.    Upon information and belief, Defendant DEL MAR FARMS, INC. is a New York corporation which has its place of business at 8344 Powers Road, Batavia, New York 14020, in the County of Genesee.

64.    Upon information and belief, Defendant HOWARD PRODUCE SALES, INC. is a New York corporation which has its place of business at Post Office Box 1, Fancher, New York 14452, in the County of Orleans.

65.    Upon information and belief, Defendant PATSY VIGNERI & SONS, INC. is a New York corporation which has its place of business at Corner Thatcher and Washington Streets, Hornell, New York 14843, in the county of Genesee.

66.    Upon information and belief, Defendant MARKY'S & SONS, INC. is a New York corporation which has its place of business at 1287 Tanglewood Drive, North Tonawanda, New York 14120, in the county of Erie.

-13-

67.     Upon information and belief, Defendant JOHN J. KASMER FARMS, LLC, is a New York domestic limited liability company which has its place of business at Post Office Box 91, Elba, New York 14058, in the county of Genesee.

68.     Upon information and belief, Grower Defendants are likely to employ the Plaintiffs and/or other class members during future seasons.

## CLASS ACTION ALLEGATIONS

69.     All claims for damages, as well as injunctive relief, under the AWPA, the RICO, federal forced labor statutes, the Alien Torts Claims Act, New York Labor Law, and New York contract law, as well as claims brought for Fraud, False Imprisonment, and Intentional Infliction of Emotional Distress (Counts II through XIII) are brought by the Named Plaintiffs on behalf of themselves and all other similarly situated persons.

70.     Class claims for injunctive relief are brought pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2). For the purpose of injunctive relief, the class consists of all migrant and seasonal agricultural workers who have been, are currently, or will be employed, solicited, recruited, hired, furnished or transported by Defendants at Defendants' contracting, growing, packaging, packing, and/or processing operations.

71.     Defendants have acted or refused to act on grounds generally applicable to the class with respect to the claims set forth in Counts II through XIII thereby making final injunctive relief applicable to the class appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

72.     Class claims for actual, statutory, punitive, and liquidated damages are brought pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).  For the purpose of actual, statutory, punitive, and liquidated damages (liquidated damages are not sought for New York Labor Law violations), the class consists of all migrant and seasonal agricultural workers furnished by the Contractor Defendants to Grower Defendants between July 1996 and the present.

73.     The precise number of individuals in the class is known only to the Defendants.  The class is believed to include over 500 individuals.  Joinder of all class members is impracticable.

74.     There are questions of law and fact common to the class.

75.     The claims of the Plaintiffs are typical of the claims of the class.  The failure of the Defendants to comply with the AWPA, New York Labor Law, New York contract law, and the failure of the Contractor Defendants to comply with the Thirteenth Amendment and federal debt peonage statutes (18 U.S.C. § 1581, 18 U.S.C. § 1584, 18 U.S.C. § 1589, 42 U.S.C. § 1994), the Alien Tort Claims Act, deprived all class members of the protections of these laws.  The Contractor Defendants' Fraud, False Imprisonment and Intentional Infliction of Emotional Distress caused harm to all class members.

76.     The claims of the Named Plaintiffs are typical of the claims of the class.  The RICO violations committed by the Contractor Defendants and the RICO Conspiracy Grower Defendants deprived all class members of their property rights under state and federal laws and caused harm to all class members.

77.     The Plaintiffs will fairly and adequately protect the interests of the class.

78.     Plaintiffs' counsel are experienced in litigating class actions in federal courts. Plaintiffs' counsel are prepared to advance costs necessary to vigorously litigate this action, including the cost of class notice.

79.     The common claims set forth in Counts II through XIII predominate over any questions affecting only individual class members.

80.     The Plaintiffs' interests in the claims set forth in Counts II through XIII are in no way antagonistic or adverse to those of other class members.

81.     A class action under Fed. R. Civ. P. 23(b)(3) is superior to other available methods of adjudicating the claims set forth in Counts II through XIII because, inter alia:

      a.     Common issues of law and fact substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions.

      b.     Many of the class members are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

      c.     There has been no litigation already commenced by members of the class to determine the questions presented; and

      d.     A class action can be managed without undue difficulty since Defendants have regularly committed the violations complained of herein and were required to maintain detailed records concerning each member of the class.

**FACTS**

82.     Upon information and belief, beginning before 1995 and continuing at least through August 2001, Defendant MARIA GARCIA-BOTELLO operated as a farm labor contractor in the

-16-

Western District of New York, and Defendants ELIAS BOTELLO, JOSE J. GARCIA, JOSE I.

GARCIA, and ROGELIO ESPINOZA assisted her in her business.

84.     In or around May 2001, Defendant MARIA GARCIA-BOTELLO submitted an

application to the U.S. Department of Labor for a certification of registration as a farm labor

contractor.

85.     On May 3, 2001, Defendant MARIA GARCIA-BOTELLO received a permit from the

State of New York Department of Health to operate migrant farm worker housing in a house on

State Route 31 in Orleans County, New York.

86.     In or around late July 2001, and continuing through late August 2001, Defendant MARIA

GARCIA-BOTELLO operated a migrant housing facility on Kendall Road in Kendall, New

York, known as the Herman Camp.

87.     Beginning before May 2001 and continuing at least through August 2001, Defendants

ELIAS BOTELLO, JOSE I. GARCIA, and ROGELIO ESPINOZA, working on behalf of

Defendant MARIA GARCIA-BOTELLO, made trips to Arizona and other states for the purposes

of recruiting migrant workers.

88.     Upon information and belief, Contractor Defendants furnished the labor of Plaintiffs

and/or other class members to the Grower Defendants.

**THE ROUTE 31 PLAINTIFFS**

89.     In or around July 2001, Defendants ELIAS BOTELLO and ROGELIO ESPINOZA,

working on behalf of Defendant MARIA GARCIA-BOTELLO, traveled to Arizona for the

purpose of recruiting undocumented field workers to work for the Contractor Defendants' operation in New York.

90.    On or about July 15, 2001, Defendants ELIAS BOTELLO and ROGELIO ESPINOZA, working on behalf of Defendant MARIA GARCIA-BOTELLO recruited approximately eleven Mexican men and boys, including Plaintiffs MIGUEL PEREZ, JAVIER HERNANDEZ, HECTOR HERNANDEZ., JUAN ANTONIO GARCIA, JUVENTINO CAZUELA, and SERGIO ROSALES CUELLO, (hereinafter "the Route 31 Plaintiffs"), in Arizona near the U.S.-Mexican border.

91.    Defendant ELIAS BOTELLO recruited the workers by telling them that they would earn between $400 and $500 a week for three or four months.

92.    Beginning on or about July 15, 2001, and continuing until on or about July 17, 2001, Defendants ELIAS BOTELLO and ROGELIO ESPINOZA, working on behalf of Defendant MARIA GARCIA-BOTELLO, transported the Route 31 Plaintiffs and five other workers to Western New York in a van that was in an unsafe condition, lacking seats for the workers and operable windows.

93.    While being transported to New York, the Route 31 Plaintiffs were not allowed to leave the van on a regular basis to use the restroom or to eat.

94.    Upon information and belief, Contractor Defendants transported the Route 31 Plaintiffs, or caused the Route 31 Plaintiffs to be transported, from Arizona to New York and to and from work sites in various vehicles without the required insurance policy or liability bond insuring against liability for damage to persons or property arising from the operation of such vehicles.

-18-

95.     On or about July 17, 2001, and on multiple occasions thereafter, Defendants MARIA

GARCIA-BOTELLO and ELIAS BOTELLO warned the Route 31 Plaintiffs that they were not

free to leave unless and until they had paid off an approximately $1,000 debt, purportedly for

their transportation from Arizona to New York, as well as debts the Defendants claimed the

workers owed for rent, food, electricity, and daily transport to the fields.

96.     On or about July 17, 2001, Defendants MARIA GARCIA-BOTELLO and ELIAS

BOTELLO spoke threateningly to the Route 31 Plaintiffs about another group of workers,

referred to as the "Veracruzans," who had escaped without paying their debts, as a means of

intimidating the Route 31 Plaintiffs and deterring them from escaping.

97.     On or about July 17, 2001, and on multiple occasions thereafter, Defendants MARIA

GARCIA-BOTELLO and ELIAS BOTELLO warned the Route 31 Plaintiffs that they should not

walk on the roads or be seen outside the house, that they should not talk to other people they

encounter, and that if they did venture out they would be deported by the Immigration and

Naturalization Service ("INS").

98.     In or around July 2001, Defendants JOSE I. GARCIA and ELIAS BOTELLO instructed

the Route 31 Plaintiffs that if authorities ever questioned them, the workers were to say that they

worked for Mr. Torres.  The workers were instructed not to admit that they worked for Defendant

MARIA GARCIA-BOTELLO.

99.     In or around July 2001, Defendant MARIA GARCIA-BOTELLO operated a migrant

housing facility on State Route 31 and filled it beyond permitted capacity.  More than forty

workers were housed in a facility with only four bedrooms and the six Route 31 Named Plaintiffs were housed with five other workers in one room containing three beds.

100.    The water and septic systems in the migrant housing facility on State Route 31 did not function properly while the Route 31 Plaintiffs were housed there by the Contractor Defendants.

101.    In or around July 2001, Defendants ELIAS BOTELLO, ROGELIO ESPINOZA and JOSE J. GARCIA frequently visited the Route 31 house to ensure that the workers did not leave.

102.    In or around July 2001, Defendant MARIA GARCIA-BOTELLO used an agent, known as "Big Dog," to watch the Route 31 Plaintiffs and make sure they did not try to escape.

103.    Upon information and belief, "Big Dog" contacted the Defendant MARIA GARCIA-BOTELLO or one of her family members if a worker strayed outside.

104.    In or around July 2001, "Big Dog" and Defendant ROGELIO ESPINOZA transported Route 31 Plaintiffs to and from the fields of local farmers to perform agricultural work.

105.    In or around July 2001, the Contractor Defendants and others supervised the Route 31 Plaintiffs in the fields.

106.    In or around July 2001, Defendant MARIA GARCIA-BOTELLO punched another worker in Plaintiff Javier Hernandez' presence and told Javier Hernandez that he would get the same treatment if he disobeyed her orders.

107.    In or around July 2001, Defendant MARIA GARCIA-BOTELLO told Plaintiff Hector Hernandez, who had injured his arm while working, that he would be locked up and would not receive food if he did not work.

108.    In or around July 2001, Defendant MARIA GARCIA-BOTELLO regularly yelled and cursed at the Route 31 Plaintiffs to intimidate them.

109.    In around July 2001, Defendant MARIA GARCIA-BOTELLO refused to buy food for the Route 31 Plaintiffs even after she was informed that they were hungry and that they had no food to eat.

110.    In or around July 2001, Defendants ELIAS BOTELLO, JOSE J. GARCIA, and ROGELIO ESPINOZA discussed guns and ammunition in the Route 31 Plaintiffs' presence to intimidate the workers.

111.    Each of the Named Route 31 Plaintiffs worked a total of approximately 60 hours for the Contractor Defendants and they were never paid for their labor.

112.    In or around July 2001, after Plaintiffs Miguel Perez, Javier Hernandez, Hector Hernandez, Juan Antonio Garcia, Juventino Cazuela, and Sergio Rosales Cuello escaped. Defendants MARIA GARCIA-BOTELLO and ELIAS BOTELLO and their agents searched for them and attempted to bring them back.

113.    On or around the evening of July 22, 2001, the named Route 31 Plaintiffs spent the night outdoors in hiding to avoid the pursuit of Defendants MARIA GARCIA-BOTELLO and ELIAS BOTELLO and their agents.

114.    As a result of the above alleged actions of Defendants, the Plaintiffs suffered great fear, suffering, humiliation and emotional distress.

## THE HERMAN CAMP PLAINTIFFS

-21-

115.    In or around late July or early August 2001, Defendants ELIAS BOTELLO and JOSE I.

GARCIA, working on behalf of Defendant MARIA GARCIA-BOTELLO, recruited

approximately thirty Mexican men and boys, including JONAS GERONIMO DOMINGUEZ,

LAZARO PEREZ RODRIGUEZ, BALDEMAR CACHO VELEZ, MARCOS CACHO VELAZ

and DANIEL VICTORIA LEON (the "Herman Camp Plaintiffs").

116.    Defendant JOSE I. GARCIA recruited the Herman Camp Plaintiffs and the other workers

by telling them that they could have plenty of general agricultural work which paid six dollars per

hour.

117.    In or around late July or early August 2001, Defendants ELIAS BOTELLO and JOSE I.

GARCIA, working on behalf of Defendant MARIA GARCIA-BOTELLO, transported the

Herman Camp Plaintiffs and approximately 26 other workers to Western New York in a single

van that was in an unsafe condition, lacking seats for the workers and operable windows.

118.    During the journey to New York, the workers were not allowed to leave the van on a

regular basis to use the restroom or to eat.

119.    Upon information and belief, Contractor Defendants transported the Herman Camp

Plaintiffs, or caused the Herman Camp Plaintiffs to be transported, from Arizona to New York

and to and from work sites in various vehicles without the required insurance policy or liability

bond to insure against liability for damage to persons or property arising from the operation of

such vehicles.

120.    In or around late July, and multiple times thereafter, Defendants MARIA GARCIA-

BOTELLO and ELIAS BOTELLO warned the Herman Camp Plaintiffs that they were not free to

leave unless and until they had paid off an approximately $1,800 debt for their transportation

from Arizona to New York, as well as debts that the Defendants claimed the workers owed for

rent, food, electricity, and daily transport to the fields.

121.   In or around late July 2001, and multiple times thereafter, Defendants MARIA GARCIA-

BOTELLO and ELIAS BOTELLO warned the Herman Camp workers that they should not walk

on the roads or be seen outside the house, that they should not talk to other people they might

encounter, and that if they did venture out they would be deported by the INS.

122.   In or around late July and August 2001, Defendant JOSE J. GARCIA supervised the

Herman Camp Plaintiffs and recorded their names and the hours that they worked.

123.   In or around late July and August 2001, Defendant JOSE I. GARCIA threatened to report

the Herman Camp Plaintiffs to the INS if they complained about their treatment.

124.   In or around late July and August 2001, Defendant ELIAS BOTELLO told the Herman

Camp Plaintiffs that if they ever escaped he would hunt them down and beat them.

125.   In or around late July and August 2001, Defendant MARIA GARCIA-BOTELLO used an

agent known as "Guzman Perez" or "El Guero," to watch the Herman Camp workers and to

make sure that they did not try to escape.

126.   In or around late July and August 2001, "El Guero" drove vehicles to transport workers to

and from the fields of local farmers to perform agricultural work.

127.   In August 2001, "El Guero" reported to Defendant MARIA GARCIA-BOTELLO the

names of workers who had spoken with a volunteer English teacher who had visited the Herman

-23-

Camp, and Defendant MARIA GARCIA-BOTELLO yelled and cursed at those workers in order to intimidate them.

128.    In or around late July and August 2001, Defendant MARIA GARCIA-BOTELLO retained the Herman Camp Plaintiffs' pay checks and gave each worker approximately thirty dollars in cash as their wages for approximately sixty hours of work. Defendant MARIA GARCIA-BOTELLO routinely retained employees' pay checks and exchanged them for far less cash than set forth on the checks.

129.    As a result of the above alleged actions of Defendants, the Plaintiffs suffered great fear, suffering, humiliation and emotional distress.

### PLAINTIFF AGUSTIN SAN JUAN

130.    Beginning in or around 1996 and continuing at various times through 2001, the Contractor Defendants furnished the labor of Plaintiff Agustin San Juan to the Grower Defendants.

131.    Upon information and belief, in or around 1996, Defendant MARIA GARCIA-BOTELLO operated a migrant housing facility in Fancher, New York and filled it beyond capacity. Between 20-30 workers were housed there, including Plaintiff Agustin San Juan.

132.    In May 1996, Defendant MARIA GARCIA-BOTELLO paid Plaintiff Agustin San Juan $4.25 per hour to clear stones from fields. Plaintiff Agustin San Juan worked 10 hours per day for approximately three weeks to one month.

133.    Upon information and belief, in June 1996, the Contractor Defendants furnished the labor of Plaintiff Agustin San Juan to Defendant ANTHONY PIEDIMONTE. Plaintiff Agustin San

-24-

Juan worked 12-13 hour per day, seven days per week and was paid $.32 per container of cucumbers and/or cabbage harvested.

134.    Upon information and belief, in 1996, the Contractor Defendants also furnished the labor of Plaintiff Agustin San Juan to Defendants BRUCE KIRBY, PHILIP VIGNERI, and PATSY VIGNERI & SONS, INC.

135.    Upon information and belief, from May through October 1999, the Contractor Defendants furnished the labor of Plaintiff Agustin San Juan to Defendants STEPHEN HOWARD, HOWARD PRODUCE SALES, INC. and ROBERT VENDETTI.  Plaintiff Agustin San Juan worked 13 hours per days, seven days per week and earned $5.15 per hour.

136.    At the end of the 1999 growing season, the Contractor Defendants failed to pay Plaintiff Agustin San Juan for at least 30 hours of work.  When confronted about these unpaid wages, Defendant ELIAS BOTELLO threatened Plaintiff Agustin San Juan.

137.    Upon information and belief, from May through November 2001, the Contractor Defendants furnished the labor of Plaintiff Agustin San Juan to Defendants ANTHONY PIEDIMONTE and BRUCE KIRBY.  Plaintiff Agustin San Juan worked 13 hours per day, seven days per week and earned $5.15 per hour.

138.    At the end of the 2001 growing season, Defendants failed to pay Plaintiff Agustin San Juan for several weeks of work.  When he sought his pay from the Contractor Defendants, MARIA GARCIA-BOTELLO said he had no business being on her property and refused to pay his wages.

139.    During the 1999 and 2001 growing seasons the Contractor Defendants housed Plaintiff

Agustin San Juan in a house for migrant farm workers on State Route 31 in Orleans County, the

same facility as the Route 31 Plaintiffs.

140.    Defendants MARIA GARCIA-BOTELLO and ELIAS BOTELLO allowed Plaintiff

Agustin San Juan to leave the migrant worker housing only to work and purchase food.

141.    Defendants MARIA GARCIA-BOTELLO and ELIAS BOTELLO warned Plaintiff

Agustin San Juan that he should not walk on the roads or be seen outside the house, that he

should not talk to other people he might encounter, and that if he did venture out he would be

caught and deported by the INS.

142.    As a result of the above alleged actions of Defendants, Plaintiff Agustin San Juan

suffered great fear, suffering, humiliation and emotional distress.

## VIOLATION OF THE RICO, 18 U.S.C. § 1962(c)

## THE RICO ENTERPRISE

143.    The Contractor Defendants, Sylvia Muñoz Rubio[1] and other labor recruiters, and the

Grower Defendants are a group of individuals associated in fact although not a legal entity, and

therefore are an "enterprise" as defined in RICO, 18 U.S.C. § 1961(4).

144.    The Contractor Defendants, using their positions as operators of their farm labor

contracting business, have made ongoing associations with two or more parties for the purpose of

executing essential aspects of a criminal worker exploitation scheme.  The Contractor

---

[1] Sylvia Muñoz Rubio is not a party to this litigation. She was identified as having
assisted the Contractor Defendants in housing some of the Plaintiffs and other class members in
Arizona prior to their abduction to New York State.

-26-

Defendants formed an ongoing association with Sylvia Muñoz Rubio and other labor recruiters, as well as with the Grower Defendants, in order to commit the predicate acts set forth below.

145. The Contractor Defendants could not successfully conduct the criminal worker exploitation scheme without the associations that formed this enterprise.

146. The Contractor Defendants operated and managed the enterprise comprised of the Contractor Defendants, Sylvia Muñoz Rubio and other labor recruiters, and the Grower Defendants. They initiated and carried out a criminal worker exploitation scheme for the enterprise. They directed the activities and managed the flow of information within the enterprise, for the purpose of advancing their scheme.

147. The enterprise regularly moved goods and people across state lines and therefore was engaged in interstate commerce.

148. The Contractor Defendants conducted or participated directly or indirectly in the affairs of the enterprise through an ongoing pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

## THE RACKETEERING ACTS

149. In order to perpetuate a criminal worker exploitation scheme, the Contractor Defendants knowingly and willfully committed the following predicate offenses under Section 1961(1)(B) of the RICO, 18 U.S.C. § 1961(1)(B):

a. Extortion in violation of 18 U.S.C. § 1951;

b. Involuntary servitude in violation of 18 U.S.C. § 1584;

c. Forced labor in violation of 18 U.S.C. § 1589;

      d.      Wire fraud in violation of 18 U.S.C. § 1343.

150.    In order to perpetuate a criminal worker exploitation scheme, the Contractor Defendants

knowingly and willfully committed the following predicate offenses under Section 1961(1)(A) of

the RICO, 28 U.S.C. § 1961(1)(A):

      a.      Larceny by extortion in violation of N.Y. Penal Law §§ 155.05(2), 155.30(6),

              155.40(2)(b); and

      b.      Kidnaping in violation of N.Y. Penal Law §§ 135.25 and 135.20.

## VIOLATION OF 18 U.S.C. § 1951: EXTORTION

151.    The Contractor Defendants knowingly and willfully committed multiple predicate acts of

extortion in violation of 18 U.S.C. § 1951 by wrongfully using threatened force and fear, as

described in paragraphs 83 to 142, *supra*, to induce the Plaintiffs to abandon their property rights

to be paid in compliance with federal and state labor laws.

152.    The Contractor Defendants violated 18 U.S.C. § 1951 by intentionally (1) affecting or

attempting or conspiring to affect interstate commerce by (2) extortion of (3) Plaintiffs' property

rights to be paid in compliance with state and federal law.

153.    These acts of extortion in violation of 18 U.S.C. § 1951 constitute "racketeering activity"

as defined in the RICO, 18 U.S.C. § 1961(1).

## VIOLATION OF 18 U.S.C. § 1584: INVOLUNTARY SERVITUDE

154.    The Contractor Defendants willfully and continuously held Plaintiffs and other class

members in involuntary servitude in violation of 18 U.S.C. § 1584 by threatening Plaintiffs and

other class members with legal coercion and use of force in order, as described in paragraphs 83

to 142, *supra*, to cause Plaintiffs and other class members to believe that they had no choice but to continue to work for the Contractor Defendants.

155.    These acts of involuntary servitude in violation of 18 U.S.C. § 1584 constitute "racketeering activity" as defined in the RICO, 18 U.S.C. § 1961(1).

## VIOLATION OF 18 U.S.C. § 1589:  FORCED LABOR

156.    The Contractor Defendants provided and obtained the labor and services of the Plaintiffs and other class members through the use of (1) threats of serious harm to and physical restraint against the Plaintiffs, (2) a scheme, plan, or pattern intended to cause the Plaintiffs to believe that, if they did not perform such labor or services, that they would suffer serious harm or physical restraint, and/or (3) abuse or threatened abuse of law or the legal process, as described in paragraphs 83 to 142, *supra*, in violation of 18 U.S.C. § 1589.

157.    These acts of forced labor in violation of 18 U.S.C. § 1589 constitute "racketeering activity" as defined in the RICO, 18 U.S.C. § 1961(1).

## VIOLATION OF 18 U.S.C. § 1343:  WIRE FRAUD

158.    The Contractor Defendants knowingly and willfully devised a scheme to defraud Plaintiffs and other class members, and to obtain money from Plaintiffs and other class members by means false or fraudulent pretenses, representations, or promises, as described in paragraphs 83 to 142, *supra*.

159.    The money obtained from Plaintiffs and other class members were the wages the Contractor Defendants were required by state and federal law to pay to the Plaintiffs and other class members, which the Contractor Defendants never paid.  At the time of their recruitment, the

Plaintiffs and other class members were promised wages far in excess of the amounts they ultimately received for their labor. For example, in July 2001, Defendant ELIAS BOTELLO promised Plaintiff Javier Hernandez that he would earn $500 per week to pick squash in New York State. Defendant ELIAS BOTELLO made many such promises to Plaintiffs and other class members with the intent to induce them to travel with him to New York, and ultimately to exploit them.

160.    Upon information and belief, the Contractor Defendants knowingly and willfully used telephones to communicate with each other, Sylvia Muñoz Rubio, and others with the intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343.

161.    Upon information and belief, these communications included, but were not limited to, telephone calls between Defendant MARIA GARCIA-BOTELLO and Defendants ELIAS BOTELLO and ROGELIO ESPINOZA, as well as telephone calls between the Contractor Defendants and Sylvia Muñoz Rubio in or around July 2001 for the purpose of arranging the scheme by which the Route 31 Plaintiffs were defrauded.

162.    Upon information and belief, these communications included, but were not limited to, telephone calls between Defendant MARIA GARCIA-BOTELLO and Defendants ELIAS BOTELLO and JOSE I. GARCIA, as well as telephone calls between the Contractor Defendants and other traffickers in or around late July or early August 2001 for the purpose of arranging the scheme by which the Herman Camp Plaintiffs were defrauded.

163.    It was reasonably foreseeable that Sylvia Muñoz Rubio and others would use telephones to respond to the Contractor Defendants. These communications furthered the fraudulent

scheme. Upon information and belief, the following list provide examples of such communications:

| DATE | NATURE OF TRANSMISSION | ORIGIN | DESTINATION |
|------|------------------------|--------|-------------|
| 7/3/01 | Cell Phone Call | Elias Botello | Sylvia Muñoz Rubio |
| 7/11/01 | Cell Phone Call | Elias Botello | Sylvia Muñoz Rubio |
| 8/1/01 | Cell Phone Call | Elias Botello | Sylvia Muñoz Rubio |
| 8/1/01 | Cell Phone Call | Elias Botello | Sylvia Muñoz Rubio |
| 8/1/01 | Cell Phone Call | Elias Botello | Sylvia Muñoz Rubio |
| 8/1/01 | Cell Phone Call | Elias Botello | Sylvia Muñoz Rubio |
| 8/4/01 | Cell Phone Call | Elias Botello | Sylvia Muñoz Rubio |
| 8/22/01 | Cell Phone Call | Rogelio Espinoza | Sylvia Muñoz Rubio |
| 8/22/01 | Cell Phone Call | Rogelio Espinoza | Sylvia Muñoz Rubio |

164.    Upon information and belief, the Contractor Defendants knowingly and willfully used wire transfers to provide financial support to each other with the intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343. Upon information and belief, the following list provide examples of such transfers:

| DATE | NATURE OF TRANSMISSION | ORIGIN | DESTINATION |
|------|------------------------|--------|-------------|
| 7/12/01 | Western Union Money Transfer | Maria Garcia-Botello (Holley, NY) | Elias Botello (Ft. Stockton, TX) |
| 7/14/01 | Western Union Money Transfer | Maria Garcia-Botello (Holley, NY) | Elias Botello (Eloy, AZ) |
| 7/15/01 | Western Union Money Transfer | Maria Garcia-Botello (Holley, NY) | Elias Botello (Flagstaff, AZ) |

| 7/17/01 | Western Union Money Transfer | Maria Garcia-Botello (Holley, NY) | Elias Botello (Columbus, OH) |
| 7/25/01 | Western Union Money Transfer | Maria Garcia-Botello (Holley, NY) | Elias Botello (Eloy, AZ) |
| 7/27/01 | Western Union Money Transfer | Maria Garcia-Botello (Holley, NY) | Elias Botello (Eloy, AZ) |

165.    These acts of wire fraud in violation of 18 U.S.C. § 1343 constitute "racketeering activity" as defined in the RICO, 18 U.S.C. § 1961(1).

## VIOLATION OF N.Y. PENAL LAW §§ 155.30, 155.40 AND 155.05(2): LARCENY BY EXTORTION

166.    The Contractor Defendants knowingly and willfully committed multiple predicate acts of extortion in violation of N.Y. Penal Law §§ 155.30(6) and 155.40(2)(b), which are defined as Grand Larceny by Extortion in N.Y. Penal Law § 155.05(2), by wrongfully using threatened force and fear, as described in paragraphs 83 to 142, *supra*, to induce Plaintiffs to abandon their property right to be paid in compliance with state and federal law.

167.    These acts of extortion in violation of N.Y. Penal Law §§ 155.30(6) and 155.40(2)(b) constitute "racketeering activity" as defined in the RICO, 18 U.S.C. § 1961(1).

## VIOLATION OF N.Y. PENAL LAW §§ 135.25 AND 135.20: KIDNAPING

168.    The Contractor Defendants abducted the Plaintiffs and other class members in violation of N.Y. Penal Law § 135.20.

169.    As described in paragraphs 83 to 142, *supra,* the Contractor Defendants restrained the Plaintiffs and other class members for a period of more than twelve hours to accomplish or

advance the commission of felonies including, but not limited to: Extortion, Involuntary Servitude, Wire Fraud, and Larceny by Extortion.

170.    These acts of kidnaping in violation of N.Y. Penal Law §§ 135.25 and 135.20 constitute "racketeering activity" as defined in the RICO, 18 U.S.C. § 1961(1).

## PATTERN OF RACKETEERING ACTIVITY

171.    The predicate acts of criminal racketeering activity described above constitute a "pattern of racketeering activity" as defined in RICO, 18 U.S.C. § 1961(5).  The Contractor Defendants repeatedly committed the RICO predicate acts of extortion, involuntary servitude, forced labor, wire fraud, larceny (by extortion), and kidnaping.  The Contractor Defendants have committed multiple acts of wire fraud during all time periods relevant to this action.

172.    The predicate acts of criminal racketeering activity described above are related because:

    a.    They had common participants;

    b.    They had the same victims (Plaintiffs and other class members);

    c.    They had the same purpose (and result) of benefitting the Defendants at the expense of the Plaintiffs and other class members; and

    d.    They shared the same methods of commission.

173.    Upon information and belief, such acts of racketeering activity have been part of the Defendants' regular way of doing business through the enterprise at least from 1995 to 2001 and therefore show a threat of continued criminal activity.

## VIOLATION OF THE RICO, 18 U.S.C. § 1962(d)

174.   Upon information and belief, the RICO Conspiracy Grower Defendants and the Contractor Defendants knowingly agreed, combined and conspired with and among themselves and others to conduct and participate, directly, or indirectly, in the affairs of the enterprise through an ongoing pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

175.   Upon information and belief, the RICO Conspiracy Grower Defendants adopted the goal of furthering, facilitating and providing support for the Contractor Defendants' criminal worker exploitation scheme and pattern of racketeering activity described in paragraphs 143 to 173, *supra*.

176.   Upon information and belief, the RICO Conspiracy Grower Defendants knew or should have known that the Contractor Defendants were committing some or all of the predicate acts.

177.   Upon information and belief, the RICO Conspiracy Grower Defendants had authority through its contracts to require that the Contractor Defendants cease their commission of the pattern of racketeering activity.  Nonetheless, the RICO Conspiracy Grower Defendants failed to exercise this authority.

178.   Upon information and belief, the RICO Conspiracy Grower Defendants knowingly increased their profit margins by furthering the Contractor Defendants' criminal worker exploitation scheme.

179.   Upon information and belief, the RICO Conspiracy Grower Defendants paid the Contractor Defendants to furnish them with agricultural workers, including the Plaintiffs and other class members, at sub-market rates.

180.    According to the U.S. Department of Labor, Bureau of Labor Statistics, in 2001, the mean hourly wage rate for farm workers like the Plaintiffs and other class members was $8.96 in New York State.

181.    Upon information and belief, in 2001, the RICO Conspiracy Grower Defendants paid the Contractor Defendants $5.15 per hour for Plaintiffs and other class members' labor -- 43% less than the mean wage for farm workers in New York State.

182.    Upon information and belief, the RICO Conspiracy Grower Defendants knew that this sub-market rate could not have existed absent the Contractor Defendants' criminal worker exploitation scheme.

183.    Upon information and belief, the RICO Conspiracy Grower Defendants knew or should have known that the workers provided to them by the Contractor Defendants were recruited and/or otherwise procured through this criminal exploitation scheme.

184.    Upon information and belief, the RICO Conspiracy Grower Defendants knew or should have known that the Contractor Defendants provided them with fraudulent social security numbers, falsified employment documents and fabricated identification for the Plaintiffs and other class members.

185.    Upon information and belief, the Contractor Defendants routinely forged signatures and fabricated addresses on the W-4 and I-9 Forms for the Plaintiffs and other class members.  For years, the RICO Conspiracy Grower Defendants routinely received these documents containing the same fictitious address for hundreds of workers.  Moreover, the handwriting and signatures

on all of these forms were markedly similar, suggesting they were completed and signed by the same hand.

186.    Upon information and belief, in 2002, Joan Torres, Special Agent with the Social Security Administration, Office of Inspector General, investigated Social Security numbers of farm workers employed by some or all of the RICO Conspiracy Grower Defendants.  Of the 286 Social Security numbers that she reviewed, only twelve were valid.

187.    Upon information and belief, the RICO Conspiracy Grower Defendants were aware that the social security numbers provided to them by the Contractor Defendants were invalid.

188.    Upon information and belief, some or all of the RICO Conspiracy Grower Defendants aided and abetted the criminal exploitation scheme by issuing paychecks for the work performed by multiple class members in the name of a single worker, as instructed by the Contractor Defendants.

189.    The information provided in paragraphs 174 to 188, *supra*, demonstrate that the Contractor Defendants and the RICO Conspiracy Grower Defendants conspired to violate the RICO, in violation of 18 U.S.C. § 1962(d).

## FIRST CAUSE OF ACTION (COUNT I)

## (FAIR LABOR STANDARDS ACT)

## (All Defendants)

## (Representative Action)

190.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to 189 as if set forth fully here.

191.    Plaintiffs I represent additional similarly situated employees of the Defendants who suffered violations of the FLSA minimum wage provisions, and who will be joined collectively pursuant to 29 U.S.C. § 216(b).

192.    Contractor Defendants and, upon information and belief, Grower Defendants failed to pay minimum wages to Plaintiffs I and/or others similarly situated in violation of the Fair Labor Standards Act, 29 U.S.C. § 206 et seq. and its implementing regulations.

193.    Contractor Defendants' and, upon information and belief, Grower Defendants' violations of the FLSA were willful, in that the Defendants knew or showed reckless disregard for whether Defendants' conduct was prohibited under the FLSA.

194.    Contractor Defendants' and, upon information and belief, Grower Defendants' failure to comply with the FLSA minimum wage protections caused Plaintiffs I and others similarly situated to suffer loss of wages and interest thereon.

## SECOND CAUSE OF ACTION (COUNT II)

## (MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT)

## (Class Action)

## ALLEGATIONS AS TO ALL DEFENDANTS:

195.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to 189 as if set forth fully here.

196.    By failing to provide the Plaintiffs and/or other class members at the time of recruitment with a written disclosure of the terms and conditions of employment, the Contractor Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29 U.S.C. §

1821(a).

197.   By failing to comply with a working arrangement, the Contractor Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29 U.S.C. § 1832(c).

198.   By knowingly giving false and misleading information to Plaintiffs and other class members the Contractor Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29 U.S.C. § 1831(f).

199.   By failing to pay Plaintiffs and/or other class members their wages when due, the Contractor Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29 U.S.C. § 1822(a).

200.   By failing to make, keep and preserve payroll records for each of the Plaintiffs and/or other class members, the Contractor Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29 U.S.C. §§ 1821(d)(1), 1831(C)(1).

201.   By failing to provide each of the Plaintiffs and/or other class members with an itemized pay statement the Contractor Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29 U.S.C. §§ 1821(d)(2), 1831(c)(2).

202.   By transporting the Plaintiffs and/or other class members in unsafe vehicles, the Contractor Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29 U.S.C. § 1841(b)(1)(A), and its implementing regulations, 29 C.F.R. §§ 500.104 and 500.105.

203.   By transporting the Plaintiffs and other class members, or allowing Plaintiffs and other class members to be transported, in vehicles without having an adequate insurance policy or

liability bond in effect, the Contractor Defendants and, upon information and belief, the Grower Defendants violated the AWPA, 29 U.S.C. § 1841(b)(1)(C), and its implementing regulations, 29 C.F.R. §§ 500.120 through 500.128.

204.     The violations of the AWPA as set forth in paragraphs 101 through 108 were the natural consequence of the conscious and deliberate actions of Contractor Defendants and, upon information and belief, the Grower Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

205.     The Defendants' failure to comply with the AWPA caused the Plaintiffs and other class members to suffer damages.

## ALLEGATIONS AS TO CONTRACTOR DEFENDANTS:

206.     By housing the Plaintiffs and other class members in housing that did not comply with state and federal law, the Contractor Defendants violated the AWPA, 29 U.S.C. § 1823(a).

207.     Upon information and belief, by failing to post a certificate of occupancy at the housing occupied by the Plaintiffs and other class members, the Contractor Defendants violated the AWPA, 29 U.S.C. § 1823(b).

208.     Contractor Defendants ELIAS BOTELLO, JOSE J. GARCIA, JOSE I. GARCIA, and ROGELIO ESPINOZA engaged in farm labor contracting activity, without a valid certificate of registration in violation of the APWA, 29 U.S.C. § 1811(a).

209.     The violations of the AWPA as set forth in paragraphs 196 to 208, *supra*, were the natural consequence of the conscious and deliberate actions of Contractor Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

210.   The Contractor Defendants' failure to comply with the AWPA caused the Plaintiffs and other class members to suffer damages.

## ALLEGATIONS AS TO GROWER DEFENDANTS:

211.   Upon information and belief, Grower Defendants utilized the services Defendants ELIAS BOTELLO, JOSE J. GARCIA, JOSE I. GARCIA, and ROGELIO ESPINOZA, without first taking reasonable steps to determine that these farm labor contractors possessed a certificate of registration that was valid and that authorized the activity for which the contractor was utilized. This violated the AWPA, 29 U.S.C. § 1842.

212.   Upon information and belief, the violations of the AWPA as set forth in paragraphs 196 to 211, *supra*, were the natural consequence of the conscious and deliberate actions of the Grower Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

213.   Upon information and belief, the Grower Defendants' failure to comply with the AWPA caused the Plaintiffs and other class members to suffer damages.

## THIRD CAUSE OF ACTION (COUNT III)

### (Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c))

### (Contractor Defendants)

### (Class Action)

214.   Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to 189 as if set forth fully here.

215.   At all times relevant to this action, the Grower Defendants and the Contractor Defendants were an enterprise which engaged in a pattern of racketeering activity.

216.   The Contractor Defendants conducted or participated directly or indirectly in the affairs of the enterprise through an ongoing pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

217.   Contractor Defendants committed the following predicate acts set forth in the RICO, 18 U.S.C. § 1961(B): extortion in violation of 18 U.S.C. § 1951, involuntary servitude in violation of 18 U.S.C. § 1584, forced labor in violation of 18 U.S.C. § 1589 and wire fraud in violation of 18 U.S.C. § 1343.

218.   Contractor Defendants committed the following predicate acts set forth in the RICO, 18 U.S.C. § 1961(1)(A): extortion in violation of N.Y. Penal Law § 155.05(2), and kidnaping in violation of N.Y. Penal Law §§ 135.20 and 135.25.

219.   Plaintiffs and other class members suffered injury as a result of these acts of Defendants.

220.   As a result of the actions of Defendants, Plaintiffs and other class members suffered injuries and are entitled to an award of treble damages, costs and attorney's fees, as well as an injunction against future violations of the RICO.

<h3 align="center">FOURTH CAUSE OF ACTION (COUNT IV)</h3>

**(Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d))**

**(Contractor Defendants and RICO Conspiracy Grower Defendants)**

**(Class Action)**

221.   Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to

189 as if set forth fully here.

222.   As alleged above, the Contractor Defendants violated 18 U.S.C. § 1962(c).

223.   The RICO Conspiracy Grower Defendants and the Contractor Defendants knowingly

agreed, combined and conspired with and among themselves and others to conduct and

participate, directly, or indirectly, in the affairs of the enterprise through an ongoing pattern of

racketeering activity in violation of 18 U.S.C. § 1962(c).  Upon information and belief, this

conspiracy to violate 18 U.S.C. § 1962(c) constitutes a violation of 18 U.S.C. § 1962(d).

224.   Upon information and belief, the RICO Conspiracy Grower Defendants directly or

indirectly, agreed to commit and/or supported the commission of the predicate acts that furthered

the RICO conspiracy.

225.   As a result of the actions of RICO Conspiracy Grower Defendants and the Contractor

Defendants, Plaintiffs and other class members suffered injuries and are entitled to an award of

treble damages, costs and attorney's fees, as well as an injunction against future violations of the

RICO.

### FIFTH CAUSE OF ACTION (COUNT V)

### (THIRTEENTH AMENDMENT TO THE U.S. CONSTITUTION, 18 U.S.C. § 1581, 18 U.S.C. § 1584, 18 U.S.C. § 1589, 42 U.S.C. § 1994)

### (Contractor Defendants)

### (Class Action)

226.   Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to

189 as if set forth fully here.

227.   Contractor Defendants acted with malicious intent to impose a condition of involuntary

servitude, debt peonage and forced labor upon Plaintiffs I and other class members against their will.

228.   Contractor Defendants did impose a condition of involuntary servitude, debt peonage and forced labor upon Plaintiffs I and other class members.

229.   This condition of involuntary servitude, debt peonage and forced labor was enforced by threats of force and by Contractor Defendants' total control over means of transportation, food, housing, and communication combined with Plaintiffs' I and other class members' rural isolation at the Contractor Defendants' housing camps.

230.   By these acts, the Contractor Defendants violated the Thirteenth Amendment of the United States Constitution, 18 U.S.C. § 1581, 18 U.S.C. § 1584, 18 U.S.C. § 1589, and 42 U.S.C. § 1994.

231.   The Contractor Defendants committed these acts willfully, knowingly, and in purposeful disregard of Plaintiffs' I rights.

232.   Plaintiffs I and other class members suffered injuries as a result of these actions.

**SIXTH CAUSE OF ACTION (COUNT VI)**

**(ALIEN TORT CLAIMS ACT)**

**(Contractor Defendants)**

**(Class Action)**

233.   Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to 189 as if set forth fully here.

234.   Plaintiffs bring this claim pursuant to the Alien Tort Claims Act, 28 U.S.C. § 1350.

-43-

235.   Defendants obtained Plaintiffs' labor through legal, psychological and other means of coercion intended to cause Plaintiffs to believe that they would suffer serious harm if they did not continue to work for the Defendants.

236.   Through such actions, Defendants committed the torts of involuntary servitude, forced labor and debt peonage in violation of treaties of the United States that, in concert with other international instruments, constitute the law of nations for purposes of the Alien Tort Claims Act, 28 U.S.C. § 1350.  The controlling law of nations includes, but is not limited to, the Universal Declaration of Human Rights, G.A. Res. 217A  (Ill.), U.N. Doc. A/810, at 71 (1948); the International Covenant on Civil and Political Rights, Dec. 19, 1966, 999 U.N.T.S. 171, 61 I.L.M. 368; the Slavery Convention on the Abolition of Slavery, the Slave Trade and Institutions and Practices Similar to Slavery, Sept. 7, 1956, 18 U.S.T. 3201, 266 U.N.T.S. 3; the International Labour Organisation (ILO) on Fundamental Principles and Rights at Work, International Labour Conference (ILC) 86th Sess., June 19, 1998, §2(c), 37 I.L.M. 1233; the Convention Concerning Forced or Compulsory Labour, June 28, 1930, 39 U.N.T.S. 55; and the Convention Concerning the Abolition of Forced Labour, June 25, 1957, 320 U.N.T.S. 291

237.   Plaintiffs and other class members suffered injuries as a result of these actions.

**SEVENTH CAUSE OF ACTION (COUNT VII)**

**(NEW YORK CONTRACT LAW)**

**(All Defendants)**

**(Class Action)**

238.   Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to

189 as if set forth fully here.

239.   By failing to comply with the terms and conditions of employment promised to the

Plaintiffs and/or other class members, Contractor Defendants and, upon information and belief,

Grower Defendants violated employment contracts entered into with the Plaintiffs and/or other

class members.

240.   As a result of the Defendants' violations of these employment contracts, the Plaintiffs

and/or other class members suffered damages.

**EIGHTH CAUSE OF ACTION (COUNT VIII)**

**(NEW YORK LABOR LAW - MINIMUM WAGE)**

**(All Defendants)**

**(Class Action)**

241.   Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to

189 as if set forth fully here.

242.   Contractor Defendants and, upon information and belief, Grower Defendants paid the

Plaintiffs and/or other class members less than the state-mandated minimum wage, thus violating

the New York Labor Law, § 670 et seq.

243.   Contractor Defendants' and, upon information and belief, Grower Defendants' failure to

pay Plaintiffs and/or other class members minimum wages which were due and when they were

due was willful within the meaning of the New York Labor Law, § 681.

244.   Plaintiffs and other class members are entitled to their unpaid minimum wages as a

consequence of the Defendants' unlawful actions and omissions, in accordance with New York

-45-

Labor Law § 681(1).

## NINTH CAUSE OF ACTION (COUNT IX)

## (NEW YORK LABOR LAW - ILLEGAL DEDUCTIONS FROM WAGES)

### (All Defendants)

### (Class Action)

245.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to 189 as if set forth fully here.

246.    Contractor Defendants and, upon information and belief, the Grower Defendants made deductions from the wages of Plaintiffs and/or other class members.  These deductions were made without the authorization of Plaintiffs or other class members.  The wage deductions thus violated the New York Labor Law, § 193.

247.    Contractor Defendants' and, upon information and belief, the Grower Defendants' wrongful deductions from the wages of Plaintiffs and other class members were willful within the meaning of the New York Labor Law, § 198.

248.    Plaintiffs and other class members were injured by Defendants' illegal deductions from their wages.

249.    Plaintiffs and other class members are entitled to their unpaid minimum wages as a consequence of the Defendants' unlawful actions and omissions, in accordance with New York Labor Law § 198(1-a).

## TENTH CAUSE OF ACTION (COUNT X)

### (FRAUD)

**(Contractor Defendants)**

**(Class Action)**

250.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to 189 as if set forth fully here.

251.    Contractor Defendants acted to recruit Plaintiffs and other class members through false representations as to facts about work conditions in the Western District of New York.

252.    Contractor Defendants made these representations for the purpose of inducing Plaintiffs and other class members to rely on them.  At the time of their recruitment, the Plaintiffs and other class members were promised wages far in excess of the amounts they ultimately received for their labor.  For example, in July 2001, Defendant ELIAS BOTELLO promised Plaintiff Javier Hernandez that he would earn $500 per week to pick squash in New York State.  Javier Hernandez was never paid for his labor.

253.    Defendant ELIAS BOTELLO made many such promises to Plaintiffs and other class members, knowing them to be false, with the intent to induce them to travel with him to New York, and ultimately to exploit them.

254.    Plaintiffs and other class members reasonably did rely on the false representations made by the Contractor Defendants.  This reliance occurred in ignorance of the falsity of Contractor Defendants' representations.

255.    Plaintiffs and other class members were injured because of their reliance on the false representations made by the Contractor Defendants.

**ELEVENTH CAUSE OF ACTION (COUNT XI)**

**(FALSE IMPRISONMENT)**

**(Contractor Defendants)**

**(Class Action)**

256.   Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to 189 as if set forth fully here.

257.   Contractor Defendants acted with malicious intent to confine Plaintiffs I and other class members.

258.   Plaintiffs I and other class members were conscious of the confinement imposed upon them by the Contractor Defendants.

259.   Plaintiffs I and other class members did not consent to the confinement imposed upon them by the Contractor Defendants.

260.   The confinement imposed upon Plaintiffs I and other class members by the Contractor Defendants was not otherwise privileged.

261.   Plaintiffs I and other class members suffered severe emotional distress and injury as a result of Contractor Defendants' actions.

**TWELFTH CAUSE OF ACTION (COUNT XII)**

**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

**(Contractor Defendants)**

**(Class Action)**

262.   Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to 189 as if set forth fully here.

263.     Contractor Defendants MARIA GARCIA-BOTELLO, ELIAS BOTELLO, JOSE J.

GARCIA, JOSE I. GARCIA, and ROGELIO ESPINOZA conduct toward Plaintiffs I and other

class members was extreme and outrageous.

264.     Contractor Defendants undertook this conduct with the intent to cause, or with the

disregard of the substantial probability of causing, severe emotional distress.

265.     Plaintiffs I and other class members suffered severe emotional distress and injury as a

result of Contractor Defendants' actions; this emotional distress and injury was causally

connected to Defendants' actions.

## THIRTEENTH CAUSE OF ACTION (COUNT XIII)

### (ASSAULT)

### (Contractor Defendants)

### (Route 31 Plaintiffs)

266.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 to

189 as if set forth fully here.

267.     Contractor Defendants intentionally placed the Route 31 Plaintiffs in apprehension of

imminent harm or oppressive contact.

268.     The Route 31 Plaintiffs suffered injury as a result of Contractor Defendants' actions.  The

Contractor Defendants are liable to the Route 31 Plaintiffs for damages, including punitive

damages, arising from this assault.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs and others similarly situated pray that this Court will enter an order:

a. Certifying this cause as a class action in accordance with Fed. R. Civ. P. 23(a) and 23(b)(2) with respect to claims set forth in Counts II through XIII;

b. Certifying this cause as a class action in accordance with Fed. R. Civ. P. 23(a) and 23(b)(3) with respect to claims for actual, statutory, and liquidated damages as set forth in Counts II through XIII;

c. Declaring that the Defendants have intentionally violated the FLSA and its implementing regulations as set forth in Count I;

d. Granting judgment in favor of Plaintiffs I and others similarly situated and against Defendants on the Plaintiffs' FLSA claims as set forth in Count I, and awarding each of the Plaintiffs and others similarly situated their unpaid minimum wages and an equal amount in liquidated damages;

e. Declaring that the Defendants have intentionally violated the AWPA and its implementing regulations as set forth in Count II;

f. Granting judgment in favor of Plaintiffs and other class members and against Defendants on claims brought under the AWPA as set forth in Count II, and awarding each of the class members the greater of his or her actual damages or statutory damages of $500 for each violation of the AWPA and its implementing regulations;

g. Declaring that the Contractor Defendants have intentionally violated the RICO as set forth in Counts III;

h. Declaring that the Contractor Defendants and the RICO Conspiracy Grower Defendants have intentionally conspired to violate the RICO as set forth in Count IV;

i. Granting judgment in favor of Plaintiffs and other class members against the Contractor Defendants and the RICO Conspiracy Grower Defendants on claims brought under the RICO as set forth in Counts III and IV, and awarding each of the class members treble damages;

-50-

j.  Declaring that the Contractor Defendants have intentionally violated 18 U.S.C. §
    1581, 18 U.S.C. § 1584 ,18 U.S.C. § 1589, and 42 U.S.C. § 1994 as set forth in
    Count V;

k.  Granting judgment in favor of Plaintiffs I and other class members and against
    Contractor Defendants on claims brought under the Thirteenth Amendment to the
    United States Constitution, 18 U.S.C. § 1581, 18 U.S.C. § 1584, 18 U.S.C. § 1589
    and 42 U.S.C. § 1994 as set forth in Count V, and awarding each of the class
    members his or her actual damages and punitive damages;

l.  Declaring that the Contractor Defendants have intentionally violated the Alien
    Tort Claims Act, 28 U.S.C. § 1350 as set forth in Count VI;

m.  Granting judgment in favor of Plaintiffs and other class members and against
    Contractor Defendants on claims brought under the Alien Tort Claims Act, 28
    U.S.C. § 1350 as set forth in Count VI, and awarding each of the class members
    his or her actual damages and punitive damages;

n.  Declaring that the Defendants have violated the terms of an employment contract
    entered into with the Plaintiffs and other class members as set forth in Count VII;

o.  Granting judgment in favor of Plaintiffs and other class members and against
    Defendants on claims brought under the Contract Law as set forth in Count VII,
    and awarding each of the class members his actual damages and punitive
    damages;

p.  Declaring that the Defendants have intentionally violated the minimum wage
    provisions of New York Labor Law as set forth in Count VIII;

q.  Granting judgment in favor of Plaintiffs and other class members and against
    Defendants on claims brought under the minimum wage provisions of New York
    Labor Law as set forth in Count VIII, and awarding each of the class members his
    or her actual damages;

r.  Declaring that the Defendants have intentionally violated wage deduction
    provisions of New York Labor Law as set forth in Count IX;

s.  Granting judgment in favor of Plaintiffs and other class members and against
    Defendants on wage claims brought under the wage deduction provisions of New
    York Labor Law as set forth in Count IX, and awarding each of the class members
    his or her actual damages;

t.  Declaring that the Contractor Defendants have committed fraud against Plaintiffs and other class members as set forth in Count X;

u.  Granting judgment in favor of Plaintiffs and other class members and against Contractor Defendants on claims brought for fraud as set forth in Count X and awarding each of the class members his or her actual damages and punitive damages;

v.  Declaring that the Contractor Defendants falsely imprisoned Plaintiffs I and other class members as set forth in Count XI;

w.  Granting judgment in favor of Plaintiffs I and other class members and against Contractor Defendants on claims brought for false imprisonment as set forth in Count XI and awarding each of the class members his or her actual damages plus punitive damages;

x.  Declaring that the Contractor Defendants intentionally inflicted emotional distress upon Plaintiffs I and other class members as set forth in Count XII;

y.  Granting judgment in favor of Plaintiffs I and other class members and against Contractor Defendants on claims brought for intentional infliction of emotional distress as set forth in Count XII, and awarding each of the class members his or her actual damages and punitive damages;

z.  Declaring that the Contractor Defendants intentionally assaulted the Route 31 Plaintiffs as set forth in Count XIII;

aa.  Granting judgment in favor of the Route 31 Plaintiffs against Contractor Defendants on claims brought for Assault as set forth in Count XIII, and awarding each Route 31 Plaintiff his or her actual damages and punitive damages;

ab.  Permanently enjoining Defendants from further violations of law as set forth in Counts I through XIII.

ac.  Awarding the Plaintiffs and other class members prejudgment interest;

ad.  Awarding the Plaintiffs and other class members the costs of this action;

ae.  Awarding the Plaintiffs and other class members a reasonable attorney's fee with respect to their claims under FLSA, the RICO, and New York Labor Law; and

af.  Granting such further relief as this Court deems just and equitable.

-52-

Dated:        October 27, 2006                    Respectfully Submitted,

John J.P. Howley
JHowley@kayescholer.com
KAYE SCHOLER LLP
425 Park Ave.
New York, NY 10022-3598
(212) 836-8311
Fax: (212) 836-6611

Daniel Werner
dwerner@wnylc.com
WORKERS' RIGHTS LAW CENTER
        OF NEW YORK, INC.
101 Hurley Ave., Suite 5
Kingston, NY 12401
(845)331-6615
Fax: (845)331-6617

Anita Butera
abutera@wnylc.com
FARMWORKER LEGAL SERVICES
        OF NEW YORK, INC.
1187 Culver Rd.
Rochester, NY 14609
(585)325-3050
Fax: (585)325-7614

Erin F. Casey
ecasey@wnylc.com
FARMWORKER LEGAL SERVICES
        OF NEW YORK, INC.
1187 Culver Rd.
Rochester, NY 14609
(585)325-3050
Fax: (585)325-7614

-53-