**United States District Court**
W̲E̲S̲T̲E̲R̲N̲ ̲D̲I̲S̲T̲R̲I̲C̲T̲ ̲O̲F̲ ̲N̲E̲W̲ ̲Y̲O̲R̲K̲

JAVIER HERNANDEZ, HECTOR HERNANDEZ, MIGUEL
PEREZ, SERGIO ROSALES CUELLO, JUVENTINO CAZUELA,
JUAN ANTONIO GARCIA, JONAS GERONIMO DOMINGUEZ,
LAZARO PEREZ RODRIGUEZ, BALDEMAR CACHO VELEZ,
MARCOS CACHO VELAZ, DANIEL VICTORIA LEON, AND
AGUSTIN SAN JUAN, ON BEHALF OF THEMSELVES, AND
ALL OTHER SIMILARLY SITUATED PERSONS,

                          PLAINTIFFS,

          v.

MARIA GARCIA-BOTELLO (A.K.A. "CHABELA"), ELIAS
BOTELLO, JOSE J. GARCIA (A.K.A. "JJ"), JOSE L.
GARCIA, ROGELIO ESPINOZA, ANTHONY PIEDMONTE,
BRUCE KIRBY, DAVID PIEDIMONTE, RODNEY
WINKSTERN, DEL MAR FARMS, INC.,  FRANCIS
DOMOY, STEPHEN HOWARD, HOWARD PRODUCE
SALES, INC.,  JAMES KIRBY, PHILLIP VIGNERI, PATSY
VIGNERI & SONS, INC., RONALD E. WEILER, D/B/A
RONCLAR FARMS,  ROBERT VENDETTI, PENNA'S
FARMS, NICHOLAS PENNA, MARKY'S & SONS, INC.,
JOHN J. KASMER FARM, JIM NORMAN, CAROLYN
NORMAN, HEARNES PRODUCE, JOHN HEARNES,
ELIZABETH HEARNES, SAFFOLD FARMS, BILL
SAFFOLD, JIM BRADWELL, PICKLE BOB, TAYLOR,
GUSTAVO, AND RODNEY & SUE,

                          DEFENDANTS.

C̲I̲V̲I̲L̲ ̲A̲C̲T̲I̲O̲N̲
**No. 02-CV-0523(S)(Sr)**

**DEFENDANT FRANCIS DOMOY'S, BRUCE KIRBY'S, JAMES KIRBY'S, STEPHEN
HOWARD'S, HOWARD PRODUCE SALES, INC.'S, DAVID PIEDMONTE'S, RODNEY
WINKSTERN'S, DEL MAR FARMS, INC.'S, RONALD WEILER'S, PHILIP
VIGNERI'S, AND PATSY VIGNERI AND SONS, INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS
COUNSEL, AND MISCELLANEOUS RELIEF**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    STATEMENT OF FACTS ......................................................................2

III.   ARGUMENT .........................................................................................5

    A.     The Plaintiffs Have Sued Two Distinct Groups Of Defendants ............................6

    B.     The Plaintiffs Must Produce Sufficient Evidence To Support A Factual Finding That Each Rule 23 Requirement Has Been Satisfied With Respect To Each Defendant ........................................................................9

    C.     Plaintiffs Have Failed To Satisfy The Substantive Requirements Of Federal Rule of Civil Procedure 23(a) ..................................................................10

          1.     The Plaintiffs Do Not Have Standing To Act As Class Representatives. ........................................................................10

          2.     The Plaintiffs Cannot Prove That "The Class Is So Numerous That Joinder Of All Members Is Impracticable" ...............................14

          3.     The Plaintiffs Cannot Show That "There Are Questions Of Law Or Fact Common To The Class" ...................................................15

          4.     The Plaintiffs Cannot Prove That "The Claims Or Defenses Of The Representative Parties Are Typical Of The Claims Or Defenses Of The Class" ..................................................................17

          5.     The Plaintiffs Cannot Prove That They "Will Fairly And Adequately Protect The Interests Of The Class" ...........................................19

    D.     The Plaintiffs Cannot Meet The Requirements of Rule 23(b)(2) .........................20

    E.     The Plaintiffs Cannot Meet The Requirements of Rule 23(b)(3) .........................21

          1.     There Is No Common Question That Predominates ..................................21

          2.     A Class Action Is Not A Superior Method For Resolving This Case. ......23

    F.     The Plaintiffs Cannot Satisfy The Requirements For Maintaining A Fair Labor Standards Act Collective Action ..........................................................24

IV.    CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614 (1997) ....................................................11

*Attenborough v. Construction and General Building Laborers' Local 79,*
238 F.R.D. 82 (S.D.N.Y. 2006) ...............................................................................................19

*Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157 (S.D.N.Y. 2003) .........................................23

*Cashman v. Dolce International/Hartford, Inc.,* 225 F.R.D. 73 (D. Conn. 2004) ........................21

*Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco
Managed Care, L.L.C.,* __ F.3d __, 2007 WL 3033489 (2nd Cir. 2007) ................................11

*Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867 (1984) ...........................................15

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2nd Cir. 2006) ................................................10, 14

*Dziennik v. Sealift, Inc.*, 2006 WL 4586140 (E.D.N.Y. 2006) ......................................................12

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974) .................................................................23

*Fogarazzao v. Lehman Brothers, Inc.*, 232 F.R.D. 176 (S.D.N.Y. 2205) .....................................21

*Gatling v. Atlantic Ritchfield Co.*, 577 F.2d 185 (2nd Cir. 1978) ................................................13

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) ........................10, 15, 16

*Hernandez v. Garcia-Botello*, 239 F.R.D. 342 (W.D.N.Y. 2006) ...................................................5

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) ......................................................24

*Hoffmann-LaRoche v. Sperling*, 493 U.S. 165 (1989) ..................................................................24

*In re Initial Public Offering Securities Litigation*, 471 F.3d 24 (2nd Cir. 2006) ...........................10

*In re Scudder Mutual Funds Fee Litigation*, 2007 Wl 2325862 (S.D.N.Y. 2007) ........................11

*In re Vivendi Universal, S.A.*, 242 F.R.D. 76 (S.D.N.Y. 2007) ....................................................23

*Karvaly v. eBay, Inc.*, __ F.R.D. __, 2007 WL 2580484 (E.D.N.Y. Sept. 6, 2007) ....................10

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) ....................................................25

*Matyasovszky v. Housing Authority of City of Bridgeport*, 226 F.R.D. 35 (D. Conn. 2005) ........20

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2nd Cir. 2002).........................................................22

*Morgan v. Metropolitan District Commission*, 222 F.R.D. 220 (D. Conn. 2004)........................18

*Noble v. 93 University Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004)..........................................19

*Novella v. Westchester Cnty.,* 443 F. Supp.2d 540 (S.D.N.Y. 2006) .............................................14

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .....................................................................................10

*Patraker v. Council on Environment of New York City*, 2003 WL 22703522 (S.D.N.Y. 2003)...25

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456 (S.D.N.Y. 2005) ........20

*Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991) ...........................11

*Robinson v. Metro-North Commuter Railroad Co.*, 267 F.3d 147 (2nd Cir. 2001).......................20

*Rocco v. Nam Tai Electronics, Inc.*, __ F.R.D. __, 2007 WL 2456093 (S.D.N.Y. 2007).............18

*Sadler v. Moran Towing Corp.*, 204 F. Supp.2d 695 (S.D.N.Y. 2002) ..........................................13

*Schwab v. Philip Morris USA, Inc.*, 449 F. Supp.2d 992 (E.D.N.Y. 2006).................................23

*Sheehan v. Purolator, Inc.*,
    103 F.R.D. 641 (S.D.N.Y. 1984), *aff'd*, 839 F.2d 99 (2nd Cir. 1988)....................................17

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)............................................12

*Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 367 (S.D.N.Y. 2005) ……………………….…22

*Toure v. Central Parking Systems*, 2007 WL 2872455 (S.D.N.Y. 2007)....................................14

*U.S. v. Chemical Foundation*,  272 U.S. 1, 14-15 (1926).........................................................6, 16

*Vengurlekar v. HSBC Bank*, 2007 WL 1498326 (S.D.N.Y. 2007)................................................14

## FEDERAL STATUTES

18 U.S.C. § 3664...............................................................................................................6, 16

29 U.S.C. § 216(b) .................................................................................................................25

**FEDERAL RULES**

Federal Rule of Civil Procedure 23(a)(2) ......................................................................15

Federal Rule of Civil Procedure 23(a)(3) ......................................................................11

Federal Rule of Civil Procedure 23(b)(2) ……………………..……………………20, 21

Federal Rule of Civil Procedure 23(b)(3) ..............................................................21, 23

Federal Rule of Evidence 803(7) ...................................................................................13

**United States District Court**
**WESTERN DISTRICT OF NEW YORK**

JAVIER HERNANDEZ *et al.*,

                        PLAINTIFFS,

      v.

MARIA GARCIA-BOTELLO  *et al.*,

                     DEFENDANTS.

                                  **CLASS ACTION**

                                  **CIVIL ACTION**
                         **No. 02-CV-0523(S)(Sr)**

**DEFENDANT FRANCIS DOMOY'S, BRUCE KIRBY'S, JAMES KIRBY'S, STEPHEN HOWARD'S, HOWARD PRODUCE SALES, INC.'S, DAVID PIEDMONTE'S, RODNEY WINKSTERN'S, DEL MAR FARMS, INC.'S, RONALD WEILER'S, PHILIP VIGNERI'S, AND PATSY VIGNERI AND SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL, AND MISCELLANEOUS RELIEF**

## I.      INTRODUCTION

Defendants Francis Domoy, Bruce Kirby, James Kirby, Stephen Howard,[1] Howard Produce Sales, Inc., David Piedmonte, Rodney Winkstern, Del Mar Farms, Inc., Ronald Weiler, Philip Vigneri, and Patsy Vigneri & Sons, Inc. respectfully submit this Memorandum requesting that this Court deny Plaintiffs' Motion for Class Certification.  The Court should deny this motion because the Plaintiffs have neither shown that they were employed by any of the defendants submitting this memorandum or that a class of people aggrieved by these defendants exists.  Unless plaintiffs can demonstrate that the answer to both questions is yes (as well as the other Rule 23 requirements), they have not satisfied Rule 23 and the case may not be certified as

---

[1]     Stephen Howard was named as an individual defendant in the original complaint. Plaintiffs later moved for leave to substitute Howard Produce Sales, Inc. for Mr. Howard as a defendant.  They were granted permission, but left Mr. Howard as a defendant. Mr. Winkstern and Mr. Vigneri should also have been dismissed for this reason.  The Court should correct this error.

a class action.  Plaintiffs have failed to establish an employment relationship with the defendants submitting this memorandum or the existence of a class of persons aggrieved by them.

## II.        STATEMENT OF FACTS

The defendants submitting this memorandum are farmers in Orleans and Genesee Counties, New York.  They run independent businesses and vary in size from small to large; they vary widely in crops grown; they vary in business organization; and vary from each other in many other details.  However, they have at least four things in common:  they contracted with Maria Garcia-Botello at some point in 2001; they assisted the government in prosecuting her for her crime; they did not employ any of the Plaintiffs in this lawsuit; and they have been sued, not by Maria Garcia-Botello, but by the Plaintiffs.

For many years, Maria Garcia-Botello worked as a farm labor contractor in Orleans and Genesee Counties.  She lived in Texas and came to New York for the growing season.  *See* Exhibit 1 (Deposition of Jose J. Garcia, Tr. at 25, ll. 5-8).  Typically, people would seek her out and ask if she had work to do.  *See* Exhibit 2 (Deposition of Jose J. Garcia, Tr. at 33, ll. 11-17).  Over the years, she developed a group of regulars who would work for her year after year.  *See* Exhibit 3 (Deposition of Jose J. Garcia, Tr. at 33, ll. 3-8. One of these regulars was Plaintiff Agustin San Juan.  *See* Affidavit of Agustin San Juan, ¶ 3.

The 2001 growing season was different.  Unexpectedly, Maria Garcia-Botello had trouble finding workers to hire.  *See* Exhibit 4 (Deposition of Jose J. Garcia, Tr. at 122, ll. 14-17) ("But the crops were ready.  We just didn't have any people.  The farmers, they had other crews there that I remember because we weren't . . .")).  Farmers with crops needing to be planted or harvested were getting crews elsewhere, *id.*, which made an already precarious situation worse.  This was not a mere business problem, it threatened her livelihood because she was paid on a

commission basis. *See* Exhibit 5 (Deposition of Jose J. Garcia, Tr. at 152, ll. 3-22; Deposition of

Maria Garcia-Botello, Tr. at 299, ll. 4-21).

     Rather than solving this business problem through legitimate means, Maria Garcia-

Botello decided to break the law.  She and her son, Elias, agreed to find illegal workers in

Arizona and hire them to work in New York.  *See* Exhibit 6 (Plea Agreement of Elias J. Botello,

p. 5).  She sent him to Arizona in July and August 2001 to locate people to work for her.  *Id.*  He

found people, hired them, and brought them to New York.  *Id.*  Maria Garcia-Botello did not

publicize this activity; she even kept it hidden from her other son, Jose J. Garcia. *See* Exhibit 7

(Deposition of Jose J. Garcia, Tr. at 227, ll. 6-8; 15-17).

     Elias Botello returned to New York from his first trip to Arizona on July 17, 2001 at

about 6:30 P.M.  *See* Exhibit 8 (Grand Jury Testimony of Javier Hernandez, Tr. at 21, ll. 10-12).

Six of the eventual Plaintiffs were on this trip: Javier Hernandez, Hector Hernandez, Sergio

Rosales Cuello, Miguel Perez, Juan Antonio Garcia, and Juventino Cazuelas.  *See* Exhibit 9

(Grand Jury Testimony of Javier Hernandez, Tr. at 15, ll. 1-25; Grand Jury Testimony of Miguel

Perez, Tr. at 4, ll. 19-23).  Elias Botello then returned to Arizona to find new employees for his

mother.  *See* Exhibit 6 (Plea Agreement of Elias J. Botello, p. 5).

     The group that arrived on July 17th worked until July 22nd and then quit.  *See* Exhibit 10

(Grand Jury Testimony of Miguel Perez, Tr. at 19, ll. 21-25; 20, ll. 4-10; Grand Jury Testimony

of Javier Hernandez, Tr. at 49, ll. 18-25; 50, ll. 1-13).  They simply left the house, followed some

nearby railroad tracks, and never returned.  *See* Exhibit 11 (Grand Jury Testimony of Miguel

Perez, Tr. at 20, ll. 8-10; Grand Jury Testimony of Javier Hernandez, Tr. at 56, ll. 5-7).

Plaintiffs do not know on which farms they worked; only Hector Hernandez and Juan Antonio

Garcia submitted affidavits to the Court and both admitted that they never knew on which farms

they worked.  The other named Plaintiffs in this group did not even submit affidavits.  It is clear, however, that they did not work at the farms of any of the growers submitting this memorandum.  For some, such as Francis Domoy, Bruce Kirby, James Kirby, it is certain because the growers either hired Maria Garcia-Botello and finished using her services before the Plaintiffs arrived or hired her after the Plaintiffs left.  *See* Exhibit 17 (Declaration of Francis Domoy, ¶ 5);  *see* Exhibit 18 (Declaration of Rodney Winkstern, ¶ 4);  *see* Exhibit 19 (Declaration of James Kirby, ¶ 5); *see* Exhibit 20 (Declaration of Bruce Kirby, ¶ 5).  For the others such as Howard Produce Sales, Inc. and Patsy Vigneri & Sons, Inc, it is clear that there is no record that the Plaintiffs had anything to do with their farms.  *See* Exhibit 23 (Declaration of Stephen Howard, Jr., ¶ 4); *see* Exhibit 22 (Declaration of Philip Vigneri, ¶ 5).

Meanwhile, Elias Botello made another trip to Arizona in August to find people to work for his mother.  *See* Exhibit 6 (Plea Agreement of Elias J. Botello, p. 5).  They arrived on approximately August 6, 2001, *see* Exhibit 12 (Grand Jury Testimony of Agent Kevin Ryan, Tr. at 44-46), along with 32 others, *see* Exhibit 13 (Grand Jury Testimony of Agent Kevin Ryan, Tr. at 43, ll. 10-19), and worked for approximately two weeks.  Affidavit of Baldemar Cacho Velez, ¶ 8.  This group included Baldemar Cacho Velez, Marcos Cacho Velez, Jonas Geronimo, and Lazaro Perez Rodriguez.  *See* Exhibit 14 (Grand Jury Testimony of Agent Kevin Ryan, Tr. at 43, ll. 10-19).  As with the first group, to this day, it is unknown where their work location was.  As noted above, most grower defendants hired Maria Garcia-Botello for projects during time frames that did not overlap with the time during which the Plaintiffs were employed.

When the first group left, their situation came to the attention of law enforcement authorities and an investigation into Maria Garcia-Botello's conduct was launched.  Each of the defendants submitting this memorandum cooperated with every demand made by investigators.

Eventually the facts were presented to a grand jury and indictments were returned. Maria Garcia-Botello, Elias Botello, Jose J. Garcia, and Jose I. Garcia were arrested. After extensive pretrial proceedings, each pleaded guilty to lesser charges on the eve of trial. No grower defendant was charged with any offense in connection with her wrongdoing. In fact, five of them (three who join in this memorandum – Stephen Howard, Jr.; Philip Vigneri; and Francis Domoy) were scheduled to testify at trial on behalf of the government. *See* Exhibit 15 (United States' Prospective Witness List, *United States v. Maria Garcia*, No. 02-CR-110-S).

At the time the criminal indictments were announced publicly, the Plaintiffs filed this lawsuit. The original complaint contained class action allegations, and Plaintiffs had 120 days to file a motion for certification. They did not and, as of November 20, 2002, this action became an individual action filed by 10 people. *Hernandez v. Garcia-Botello*, 239 F.R.D. 342, 349 (W.D.N.Y. 2006) (Schroeder, M.J.). Later, the Plaintiffs sought a stay of proceedings while the criminal action against Maria Garcia-Botello and her family was pending. Later, the stay was lifted and discovery commenced. After obtaining the results of the criminal investigation, the Plaintiffs added a number of causes of action, two new plaintiffs, and numerous additional defendants. Leave was granted in late 2006. In late June 2007, the Plaintiffs took Maria Garcia-Botello's, Elias Botello's, and Jose J. Garcia's depositions. At the same time, the Plaintiffs were seeking permission to file a motion for class certification, even though there were no longer any class claims in the complaint. Leave to file a class certification motion was granted on September 26, 2007, and Plaintiffs filed their brief on October 26, 2007.

### III.    ARGUMENT

This matter is currently an individual action as to the growers and should stay that way. From early in this litigation, the Plaintiffs have known that the growers submitting this

memorandum did not employ them in 2001 and, even with the passage of five years, the record presented in support of this motion does not support a different conclusion.  In fact, of the four Plaintiffs who submitted declarations (eight plaintiffs submitted nothing), none has provided sufficient evidence that he was employed by or wronged by anyone other than Maria Garcia-Botello.  This non-existent evidentiary showing simplifies the Court's analysis of the Rule 23 requirements:  Plaintiffs cannot represent a class, assuming one exists, against a defendant who has not harmed them.  The case should not go forward as a class action.

**A.      The Plaintiffs Have Sued Two Distinct Groups Of Defendants.**

Because Plaintiffs' memorandum largely ignores any distinction between the different groups of defendants, it is important to clearly distinguish them before applying Rule 23 to the facts of this case as shown by the record.  There is a core group of defendants – Maria Garcia-Botello, Elias Botello, Jose J. Garcia, and Jose I. Garcia.  These are the so-called "Contractor Defendants."  According to Plaintiffs' memorandum, the sole purpose of this lawsuit is to recover from them for their criminal wrongdoing.  *See* Memorandum of Points and Authorities in Support of Motion for Class Certification ("Plaintiffs' Memorandum"), p. 1 ("In this case, Plaintiffs seek redress for civil claims flowing from [their] criminal conduct").[2]

The other group of defendants consists of growers who hired Maria Garcia-Botello at some point in 2001.  Because the Plaintiffs claim to seek damages for the Contractor Defendants' conduct, it is difficult to identify a plausible basis for suing any of the grower defendants.  The three complaints in this case allege wrongdoing generally by all of the "grower defendants" and

---

[2]      The Court ordered Elias Botello to pay $5,922.50 which the Court determined was "the full amount of each victim's losses."  18 U.S.C. § 3664(f)(1)(A).  *See* Exhibit 16 (Judgment in a Criminal Case – Elias J. Botello).  It is presumed that the duty to fully compensate the plaintiffs was discharged.  *United States. v. Chemical Foundation*,  272 U.S. 1, 14-15 (1926).  Whether compensating Plaintiffs (except for Mr. San Juan, who was not a victim) moots this case is an issue beyond the scope of this memorandum.

do so only "upon information and belief."  *See e.g.*, Second Amended Complaint, ¶ 192 (alleging

that "[U]pon information and belief, Grower Defendants failed . . .").  This method of pleading

attempts to avoid the necessity, if one is to avoid guilt by association, of identifying individual

defendants as wrongdoers and notifying them of the particular wrong they allegedly committed.

This second group, then, is not a single entity but a disparate collection of individuals and

entities who make their living, growing, and selling agricultural crops.  Because referring to

them as "grower defendants" obscures, rather than clarifies, important distinctions, a brief

summary of specifics about the growers submitting this memorandum follows.

Francis Domoy is the proprietor of Domoy Farms.  It is located in Oakfield, New York in

Genesee County with some acreage in Orleans County.  Declaration of Francis Domoy, ¶ 2

("Domoy Decl., ¶ __").  *See* Exhibit 17.  Domoy Farms hired Maria Garcia-Botello to provide

labor between June 26, 2001 and July 4, 2001.  Domoy Decl., ¶ 4.  Domoy Farms has no record

that any of the Plaintiffs in this case worked on its farm, Domoy Decl., ¶ 5, nor did it have

anything to do with Maria Garcia-Botello before that time or since.  The Plaintiffs' evidentiary

proffer does not mention Francis Domoy.

Del Mar Farms, Inc. ("Del Mar") was a New York corporation in good standing in 2001.

Declaration of Rodney Winkstern, ¶ 1 ("Winkstern Decl., ¶ __").  *See* Exhibit 18.  It is located in

Batavia, New York in Orleans County.  Winkstern Decl., ¶ 2.  Del Mar contracted with Maria

Garcia-Botello in June 2001 and in October 2001.  Winkstern Decl., ¶ 4.  A review of Del Mar's

records demonstrates that it did not contract with her in July, August, or September 2001.  The

Plaintiffs' evidentiary proffer does not mention Rodney Winkstern or Del Mar.

James Kirby is the proprietor of Kirby Farms.  Declaration of James Kirby, ¶ 1 ("J. Kirby

Decl., ¶ ___").  *See* Exhibit 19.  Kirby Farms in located in Albion, New York in Orleans County.

Kirby Decl., ¶ 2.  Maria Garcia-Botelllo provides workers to Kirby Farms only between June 16, 2001 and June 29, 2001.  J. Kirby Decl., ¶ 4.  A review of Kirby Farms' records indicates that none of the Plaintiffs worked at Kirby Farms. J. Kirby Decl., ¶ 5-6. The Plaintiffs' evidentiary proffer does not mention James Kirby or Kirby Farms.

Bruce Kirby is the proprietor of Little Lake Farms.  Declaration of Bruce Kirby, ¶ 1 ("B. Kirby Decl., ¶ ___").  *See* Exhibit 20.  Little Lake Farms is located in Albion, New York in Orleans County.  B. Kirby Decl., ¶ 2.  Little Lake Farms contracted with Maria Garcia-Botello between July 5, 2001 and July 10, 2001.  B. Kirby Decl., ¶ 4.  It did not contract with her at any other time.  *Id.*   A review of Little Lake Farms' records indicates that none of the Plaintiffs worked there.  B. Kirby Decl., ¶ 6.  Plaintiffs' evidentiary proffer consists of Agustin San Juan's incorrect and inadmissible speculation that he may have worked on a crew at Little Lake Farms at some undefined point in time.

David Piedmonte is the proprietor of Piedmonte Produce.  Declaration of David Piedmonte, ¶ 1 ("Piedmonte Decl., ¶ __").  *See* Exhibit 21.  Piedmonte Produce is located in Holley, New York in Orleans County.  Piedmonte Decl., ¶ 2.  A review of Piedmonte Produce's records indicates that none of the Plaintiffs worked there.  Piedmonte Decl., ¶¶ 5, 6.  Plaintiffs' evidentiary proffer consists of Mr. San Juan's speculation that he may have worked on a crew at Piedmonte Produce.  Mr. San Juan does not claim that David Piedmonte employed him or wronged him in any specific way.  This speculation, moreover, is incorrect and inadmissible.

Philip Vigneri is president of Patsy Vigneri & Sons, Inc. ("PVS").  Declaration of Philip Vigneri, ¶ 1 ("Vigneri Decl., ¶ ___").  *See* Exhibit 22.  PVS is a corporation of the State of New York in good standing and was in good standing throughout 2001.  Vigneri Decl., ¶ 1.  PVS is located in Elba, New York in Genesee County.  Vigneri Decl., ¶ 2.   PVS contracted with Maria

8

Garcia-Botello from May 11, 2001 to October 19, 2001.  Vigneri Decl., ¶ 4.  A review of the

PVS's records indicates that none of the Plaintiffs worked there in 2001.  Vigneri Decl., ¶¶ 5, 6.

Plaintiffs' evidentiary proffer consists of Mr. San Juan's speculation that he may have worked on

a crew at PVS at some point in time.  Mr. San Juan does not claim that PVS employed him or

wronged him in any specific way.  This speculation, moreover, is incorrect and inadmissible.

Stephen Howard, Jr. is a manager for Howard Produce Sales, Inc. ("HPS").  Declaration

of Stephen Howard, Jr., ¶ 1 ("Howard Decl., ¶ ___").  *See* Exhibit 23.  HPS is a corporation of

the State of New York in good standing and was in good standing throughout 2001.  Howard

Decl., ¶ 1.  HPS is located in Albion, New York in Orleans County.  Howard Decl., ¶ 2.  A

review of HPS' records shows that none of the Plaintiffs worked there in 2001.  Howard Decl.,

¶¶ 4, 5.  Plaintiffs' evidentiary proffer consists of Mr. San Juan's speculation that he may have

worked on a crew at HPS.  Mr. San Juan does not claim that HPS employed him or wronged him

in any specific way.  This speculation, however, is incorrect and inadmissible.

Ronald Weiler is a proprietor of Ronclar Farms ("Ronclar").  Ronclar is located in

Batavia, New York in Orleans County.  A review of Ronclar's records shows that none of the

Plaintiffs worked for Ronclar in 2001.  Plaintiffs' evidentiary proffer does not mention Ronald

Weiler.

There is no such entity as "grower defendants."  There are only independent, individual

farmers entitled to an *individual* determination on the merits.

**B.    The Plaintiffs Must Produce Sufficient Evidence To Support A Factual
        Finding That Each Rule 23 Requirement Has Been Satisfied With Respect
        To Each Defendant.**

"A district judge may certify a class only after making determinations that each of the

Rule 23 requirements has been met" as to each defendant.  *In re Initial Public Offering Securities*

9

*Litig.*, 471 F.3d 24, 41 (2nd Cir. 2006) ("*In re IPO*").  Rule 23 requires "actual, not presumed, compliance" with its standards as shown by "a rigorous analysis." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161 (1982).   In making these decisions, the court must resolve any factual dispute related to a Rule 23 requirement based on the evidentiary record submitted by the parties, *In re IPO*, 471 F.3d at 41, such as affidavits, documents, and testimony, by a preponderance of the evidence.  *Karvaly v. eBay, Inc.*, __ F.R.D. __, 2007 WL 2580484 (E.D.N.Y. Sept. 6, 2007) ("The class may be certified only if the Court determines, by a preponderance of the evidence, that each of the Rule 23(a) and Rule 23(b)(3) factors are met in this case.").[3]  The court must make these determinations even if they overlap with the merits of a claim or defense.  *In re IPO*, 471 F.3d at 42.

C.    **Plaintiffs Have Failed To Satisfy The Substantive Requirements Of Federal Rule of Civil Procedure 23(a).**

1.    **The Plaintiffs Do Not Have Standing To Act As Class Representatives.**

A fundamental prerequisite for any suit in federal court is standing.  Just as a plaintiff must have standing to sue a particular defendant, Plaintiffs must have standing to sue the defendants against whom they are bringing their class action.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2nd Cir. 2006).  This rule derives from both Article III of the Constitution and from Rule 23.  *Amchem*

_____

[3]    The previously prevailing "some showing" test is no longer the law.  *In re IPO*, 471 F.3d at 42 ("[O]ur conclusions necessarily preclude the use of a 'some showing' standard, and to whatever extent *Caridad* might have implied such a standard for a Rule 23 requirement, that implication is disavowed.").

*Products, Inc. v. Windsor,* 521 U.S. 591, 614 (1997).  Rule 23, of course, cannot be interpreted to authorize suit where the Constitution prohibits one.  *Id.*

The Constitution (and therefore Rule 23) requires that a Plaintiff have a claim against a defendant.  *O'Shea*, 414 U.S. at 494.  It also requires that every class member have a claim against each defendant.  *Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991) (collecting cases).  If no named plaintiff has a claim against a particular defendant, that defendant should be dismissed for lack of standing or, as some courts analyze it, lack of typicality under Rule 23(a)(3). [4]  *Dziennik v. Sealift, Inc.*, 2006 WL 4586140 (E.D.N.Y. 2006) (dismissing claims against certain defendants in multi-defendant employment matter because plaintiffs did not work for them).

The Plaintiffs fail this threshold requirement as to any of the growers submitting this memorandum.  At a minimum, to have a claim against one of these growers, a plaintiff would have to show that he was employed by that particular grower and that he was wronged in some way.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998).  Yet, eleven of twelve Plaintiffs present no evidence at all about by whom, if anyone, other than Maria Garcia-Botello, he may have been employed.  Moreover, it is certain that a number of growers did not have anything to do with the Plaintiffs because they did not associate with Maria Garcia-Botello

---

[4]     Some courts analyze this issue under Rule 23(a)(3).  These courts reason that the Rule 23 requirements are to be interpreted in light of Article III and view analysis of typicality as the occasion to consider Article III standing issues.  *In re Scudder Mutual Funds Fee Litig.,* 2007 WL 2325862, *9 (S.D.N.Y. 2007).  The Second Circuit appears to view Article III standing as an implicit requirement of Rule 23.  *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* __ F.3d __, 2007 WL 3033489, *9 (2nd Cir. 2007).

during the relevant five or fourteen days during which the Plaintiffs were employed by her.  *See, e.g.* Declaration of Francis Domoy, ¶ 5; Declaration of Bruce Kirby, ¶ 5; Declaration of James Kirby, ¶ 5; Declaration of Rodney Winkstern, ¶ 5.  For others, the pertinent business records do not contain any indication that any of the Plaintiffs worked for Maria Garcia-Botello on a project for their farm.  *See, e.g.*, Declaration of Stephen Howard, Jr., ¶ 5; Declaration of Philip Vigneri, ¶ 5; Declaration of David Piedmonte, ¶ 5. This alone provides substantive and un-rebutted evidence that the Plaintiffs had nothing to do with those growers and Plaintiffs make no argument to the contrary. *See* Fed. R. Evid. 803(7).

Only Plaintiff Agustin San Juan even mentions any defendant submitting this memorandum but he does not say that he definitely worked for them and in what year.  He says that he "believes" he might have worked for Maria Garcia-Botello on a project at certain of the grower defendants' farms at some unspecified time between 1996 and 2001.  Affidavit of Agustin San Juan, ¶ 4.  This testimony is insufficient.  First, he does not testify to an employment relationship between himself and any grower:  he testified to the location where he might have worked.  *Id.*  Just because he worked at a specific location for a subcontractor does not mean that the owner of that location employed him.  Second, Mr. San Juan does not offer a specific time frame for when he worked.  Instead, he offers a wide range of years.  Third, even if the testimony could pass that hurdle, Mr. San Juan does not explain if or how any person allegedly wronged him legally.  Mr. San Juan certainly was not harmed in a way typical of the other Plaintiffs.  Contradictory to his boilerplate claims of "slave-like conditions," Mr. San Juan voluntarily returned year-after-year to work for Maria Garcia-Botello.  *See* Affidavit of Agustin San Juan, ¶ 5.  Notably, he does not join the other Plaintiffs in alleging a federal minimum wage violation.   Finally, as speculation, his testimony is inadmissible.  *Gatling v. Atlantic Richfield*

12

*Co.*, 577 F.2d 185, 188 (2nd Cir. 1978); *Sadler v. Moran Towing Corp.*, 204 F. Supp.2d 695, 698 (S.D.N.Y. 2002).

It is difficult to understand Plaintiffs' basis for claiming that they have standing, and they offer no explicit argument that they do.  Plaintiffs' argument for standing appears to be based on the following flawed syllogism:  Maria Garcia-Botello and the other Contractor Defendants provided labor to growers in Genesee and Orleans counties.  Grower defendants were growers in Genesee and Orleans counties. Therefore, the Plaintiffs worked for the grower defendants submitting this memorandum.  The syllogism might have merit if the grower defendants were the only growers in those counties; however, agricultural data provided by the U.S. Department of Agriculture in its  2002 Census of Agriculture (and to which the grower defendants submitting this memorandum ask the Court to take judicial notice),[5] evidence the fact that there are numerous growers and acres of agricultural commodities grown in Orleans and Genesee counties that far exceed the number of growers sued by plaintiffs and whose acreage is small compared to the total number of acres farmed in those counties in 2001.

No Plaintiff has a claim against any particular grower.  It follows that Plaintiffs may not proceed as a class against these defendants.[6]  Because they lack standing against any of the defendants, the Court should deny this motion.  However, in the interest of completeness, this memorandum will also analyze the Rule 23 requirements.

---

[5]     *See* http://www.nass.usda.gov/census/census02/volume1/ny/NYVolume104.pdf.  It was last checked on November 26, 2007.

[6]     Because Plaintiffs' lack of standing also impairs this Court's subject-matter jurisdiction under Article III, the defendants submitting this memorandum will also be filing motions for summary judgment directly challenging Plaintiffs' standing.

2.      **The Plaintiffs Cannot Prove "The Class Is So Numerous That Joinder Of All Members Is Impracticable."**

The Plaintiffs have not shown that a sufficiently numerous class exists against each of the defendants submitting this memorandum.  The applicable rules are well-established.  "The party seeking certification must show that 'the class is so numerous that joinder of all members is impracticable.'" *Vengurlekar v. HSBC Bank*, 2007 WL 1498326, *4 (S.D.N.Y. 2007); *Toure v. Central Parking Sys.*, 2007 WL 2872455, *5 (S.D.N.Y. 2007); *Novella v. Westchester Cnty.,* 443 F. Supp.2d 540, 546 (S.D.N.Y. 2006). "[A] court cannot find numerosity based on "'pure speculation without any factual support.'" *Toure*, 2007 WL 2872455, *4, (*quoting Jeffries v. Pension Trust Fund of Elec. Indus.*, 172 F. Supp.2d 389, 394 (S.D.N.Y.  2001)). The Plaintiffs must make an evidentiary showing as to these elements. *Id.*

Numerosity must be assessed on a defendant-by-defendant basis.  A class cannot be composed of some people with claims against a particular defendant (i.e., who have standing) and of people who do not have such claims (i.e., who lack standing as to that particular defendant).  Thus, the first step in analyzing numerosity is to identify which potential class members have standing (or, more precisely, defining the class to exclude those without standing) against a particular defendant.  Only then can the Court assess whether the requesting group meets the numerosity criterion.

Plaintiffs do not analyze whether, assuming that one exists, any class against the individual farmers submitting this memorandum meets the Rule 23(a) requirement.  Instead, they focus exclusively on the hiring done by the Contractor Defendants.  This is another example of Plaintiffs ignoring the distinctions between the Contractor Defendants and the individual grower defendants.  Moreover, any class would be limited to those with standing to sue a particular defendant.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2nd Cir. 2006) ("[n]o class may be

certified that contains members lacking Article III standing.")  In short, not only have the Plaintiffs failed to carry their burden on the issue of numerosity, they record affirmatively contradicts such a finding.

> **3.    The Plaintiffs Cannot Show That "There Are Questions Of Law Or Fact Common To The Class."**

The next requirement is that "[t]here are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Rule 23(a)(2) requires the court to find "the existence of a class of persons who have suffered the same injury as" the Plaintiffs. *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161 (1982).  The commonality requirement is designed to identify the existence and scope of a class of allegedly wronged people.  "[T]he existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff may successfully maintain a class action."  *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 877-78 (1984).  As the Supreme Court explained:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Falcon,* 457 U.S. at 161.  "It is equally clear that a class plaintiff's attempt to prove the existence of a companywide policy, or even a consistent practice within a given department, may fail even though discrimination against one or two individuals has been proved." *Cooper*, 467 U.S. at 877-78.

Plaintiffs must show, with evidence, "the existence of a class of persons with the same injury" as themselves, *i.e.*, that there were other victims of Maria Garcia-Botello's criminal conduct.  This is necessarily a factual issue that has not been shown by Plaintiffs.  Plaintiffs'

Memorandum says that they seek redress of alleged civil wrongs from criminal conduct; yet, they fail to show that linkage between Maria Garcia-Botello's criminal conduct, common civil wrongs flowing from it, and her relationship with the defendants submitting this memorandum. Moreover, even if there were such a linkage, Plaintiffs have failed to show a potential group of class members harmed by such conduct.

Plaintiffs' approach fails under the holding in the Supreme Court's decision in *Falcon*. In *Falcon*, the plaintiff alleged and ultimately proved that he had been the victim of discriminatory promotional practices. *Falcon*, 457 U.S. at 157. He sought to challenge them on a class-wide basis. The Supreme Court held that proving an individual claim was insufficient to show the existence of a class, even though the wrong was almost, by definition, a class wrong.

Plaintiffs' analysis of commonality is incompatible with *Falcon*. There is no doubt that the Supreme Court could have spotted many "common questions of law and fact" in *Falcon* if it agreed with the plaintiff's (and Plaintiffs' here) argument that there was no gap between proof of an individual wrong and proof that a class existed. What is required is proof that others experienced the "same injury" as Plaintiffs. Under *Falcon*, only after the existence of a class is established, then the search for common issues begins. Plaintiffs skip this first, critical step and consequently never acknowledge, much less satisfy, the full measure of their burden of proof. In fact, as part of the sentencing process under 18 U.S.C. § 3664, the government was required to identify all victims of the crime. The only people the government ever found were the Plaintiffs (with the exception of Mr. San Juan). Absent clear evidence to the contrary, it is presumed that the government accurately and completely discharged this duty. *United States. v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926). In short, the only victims of Maria Garcia-Botello's conduct were Plaintiffs. *See* Exhibit 25.

Plaintiffs are required to produce evidence going to the existence of particular groups of allegedly aggrieved persons as to each defendant. *Sheehan v. Purolator, Inc.*, 103 F.R.D. 641, 649 (S.D.N.Y. 1984). They have not. Even the four affidavits submitted by the Plaintiffs do not suggest the existence of a class of people who were supposedly wronged by these defendants. Declaration of Baldemar Cacho Velez, ¶ 6 ("I was not allowed to communicate with anyone but the other workers, nor was I permitted to have any visitors."); ¶ 7 ("Maria Garcia-Botello told me that I had to work for her to pay off my debt."); ¶ 8 ("*I* worked for the Contractor Defendants[.]"); *id.*, ("*I* was paid in cash[.]"). The affidavit of Hector Hernandez is much the same. Affidavit of Hector Hernandez, ¶ 3 ("*I* was a farm laborer. . ."); ¶ 5 ("While I worked on Contractor Defendants' crews, I lived at a house on Route 31[.]"); ¶ 8 ("*I* was not able to communicate with anyone but the other workers. . ."); ¶ 9 ("Maria Garcia-Botello told *me* that *I* had to work for her to pay off *my* debt[.]").

The closest that the Plaintiffs come to a class claim of any kind is Paragraph 9 of the Affidavit of Juan Antonio Garcia Ambrosio in which Mr. Garcia states that he heard talk from others about Maria Garcia Botello's payroll practices. Setting aside that it is inadmissible as unambiguous hearsay, it says nothing about any of the defendants submitting this memorandum. It only speaks to the actions of the Contractor Defendants.

### 4. The Plaintiffs Cannot Prove That "The Claims Or Defenses Of The Representative Parties Are Typical Of The Claims Or Defenses Of The Class."

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[7] Typicality is satisfied when "each class member's claim arises from the same course of events, and each class member makes

---

[7]   See footnote 4, *supra*, where the relationship of typicality and standing are discussed.

similar legal arguments to prove the defendant's liability." *Rocco v. Nam Tai Elec., Inc.*, __ F.R.D. __, 2007 WL 2456093, *3 (S.D.N.Y. 2007).  In addition, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, certification for the class is improper because he or she can no longer act in the best interest of the class." *Id.* (internal quotation marks and citation omitted); *see also Morgan v. Metropolitan Dist. Comm'n*, 222 F.R.D. 220, 230 (D. Conn. 2004).

Even if a class of other allegedly injured people existed, Plaintiffs' claims are not typical of them.  First, as discussed in detail above, there is no evidence that any injury that they may have experienced involved any of the individual growers submitting this memorandum.  Thus, by definition, their claims are not typical of any potential class of persons who do have a claim against an individual grower.  Second, all but one of the Plaintiffs claims an injury from, and seeks redress for, Maria Garcia-Botello's offense in July and August 2001. "In this case, Plaintiffs seek redress for civil claims flowing from [their] criminal conduct."  Plaintiffs' Memorandum, p. 1. Plaintiffs are the only victims of her crime, *see* Exhibit 24 (Letter dated October 22, 2004 from Allison Jernow to Timothy Hoover), and Agustin San Juan is not.  *Id.* Their injury is unique to themselves, fully compensated, and atypical.  Moreover, Plaintiffs have not contradicted Jose J. Garcia's testimony that the 2001 growing season was uniquely difficult for Maria Garcia-Botello, and it was the only time that she could not hire enough workers through word-of-mouth.  The Plaintiffs offer no evidence that directly or indirectly suggests that there are potential class members who may have worked for the Contractor Defendants and provided labor for the defendants submitting this memorandum and who were victims of the Contractor Defendants' criminal conduct in 2001.  The only Plaintiff who was not a criminal victim was Agustin San Juan, who claims to have voluntarily worked for Contractor Defendants

for a number of years and whose actions belie the allegations in his affidavit that workers for Maria Garcia-Botello experienced "slave-like conditions."  Affidavit of Agustin San Juan, ¶ 15.

Moreover, as discussed in detail above, there is no evidence that a class of persons aggrieved by any of the individual growers filing this memorandum even exists.  Plaintiffs' alleged injuries cannot be "typical" of injuries shared by a non-existent class.  In addition, there was no common course of action involving the Plaintiffs, other potential class members, and the defendants submitting this memorandum. The affidavits submitted by the Plaintiffs make this abundantly clear.  *See supra*, at 17.  Plaintiffs have not satisfied Fed. R. Civ. P. 23(a)(3).

### 5. The Plaintiffs Cannot Prove That They "Will Fairly And Adequately Protect The Interests Of The Class."

The last Rule 23(a) requirement is that the Plaintiffs "will fairly and adequately protect the interests of the class."  Proposed class representatives must show that they have no interests antagonistic to the proposed class members. *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 338-39 (S.D.N.Y. 2004).  A defect in typicality or commonality is a sufficient basis for finding that a class representative is not adequate.  *Attenborough v. Construction and General Bldg. Laborers' Local 79*, 238 F.R.D. 82, 101 (S.D.N.Y. 2006).  A named plaintiff must be actively involved in the litigation. *Id.*

The Plaintiffs are not adequate class representatives.  The record shows that they have not investigated their claims, that they have failed to participate in this action, that they have continued to sue people against whom they knew or should have known that they did not have standing, and that they have seriously prejudiced the rights of absent class members.  The Plaintiffs did not seriously and independently investigate their claims.  This is evidenced by their inability to establish that the Plaintiffs themselves have standing to sue the grower defendants. As discussed above, Plaintiffs in this lawsuit cannot satisfy the typicality requirement and cannot

serve as adequate representatives of those with different claims.  Nor have the Plaintiffs participated in this action as required.  At a juncture in the case in which a strong evidentiary showing is critical, eight Plaintiffs failed to submit affidavits:  Javier Hernandez, Sergio Rosales Cuello, Miguel Perez, Marcos Cacho, Juventino Cazuela, Lazaro Perez, Jonas Geronimo Dominguez, and Daniel Victoria Leon.  No matter what else the Court does, these Plaintiffs should only be allowed to proceed individually[8], where they nonetheless will be unable to establish standing.

### D.    The Plaintiffs Cannot Meet The Requirements of Rule 23(b)(2).

In addition to making a determination as to each of the Rule 23(a) criteria as to each defendant, the Court must also find that the Plaintiffs have complied with one of the subsections of Rule 23(b).  The first is Rule 23(b)(2).

"The (b)(2) class action is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury.  *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2nd Cir. 2001).  Certification under Rule 23(b)(2) would be inappropriate, however, "in cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 468 (S.D.N.Y. 2005).  In addition, injunctive relief must "predominate in order for a class to be certified under Rule 23(b)(2)." *Matyasovszky v. Housing Authority of City of Bridgeport*, 226 F.R.D. 35, 44 (D. Conn. 2005) (citation omitted).  The Court should assure that, at minimum, "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or

---

[8]    Plaintiffs' lack of participation may have seriously prejudiced the class by allowing the statute of limitations to begin running after being tolled.  The full consequences of this omission are beyond the scope of this memorandum and the growers submitting this memorandum reserve the right to raise this issue at a later point.

declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. *Cashman v. Dolce Int'l/Hartford, Inc.*, 225 F.R.D. 73, 94 (D. Conn. 2004) (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2nd Cir. 2001)).

The record contains no evidence of an ongoing class-wide wrong or the imminent threat of one. Injunctive relief would be neither reasonable nor appropriate in a case in which the alleged wrong ended with the arrest of the perpetrators more than 5 years ago. There is no evidence that plaintiffs worked for the defendants during 2001 or at any other time and that they would be subjected to future harm from defendants. No reasonable plaintiff would initiate a massive, multi-defendant class action for the purpose of obtaining injunctive relief in these circumstances. Moreover, the relief sought in the Second Amended Complaint shows that money damages clearly is the predominant form of relief sought for alleged wage and hour violations under federal and state law and for alleged violations of MSPA. Certification under Rule 23(b)(2) should be denied.

### E.   The Plaintiffs Cannot Meet The Requirements of Rule 23(b)(3).

A class action may be certified under Rule 23(b)(3) only if the Court finds that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.   <u>There Is No Common Question That Predominates</u>.

"The 23(b)(3) predominance requirement is more stringent and far more demanding than the commonality requirement of Rule 23(a). Courts frequently have found that the requirement was not met where, notwithstanding the presence of common legal and factual issues that satisfy the commonality requirement, individualized inquiries predominate. *Fogarazzao v. Lehman*

*Bros., Inc*. 232 F.R.D. 176, 181-82 (S.D.N.Y. 2005) (internal quotation marks and footnotes

omitted).  To satisfy the predominance requirement, it is necessary to show much more than a

common course of conduct.  *Moore v. PaineWebber, Inc*.,  306 F.3d 1247, 1255 (2nd Cir. 2002)

("We agree with these courts that a common course of conduct is not enough to show

predominance, because a common course of conduct is not sufficient to establish liability of the

defendant to any particular plaintiff.").

The first step in analyzing predominance is to identify "the legal or factual questions that

qualify each class member's case as a genuine controversy."  *Schwab v. Philip Morris USA,

Inc*., 449 F. Supp.2d 992, 1114-15 (E.D.N.Y. 2006), *quoting Moore v. PaineWebber, Inc*., 306

F.3d 1247, 1252 (2nd Cir. 2002) (internal quotation omitted)).  The next step is to decide what

elements of that controversy can be resolved through common proof and which cannot.  *Schwab*,

449 F. Supp. 2d at 114-15.  Upon the completion of these two steps, the court then decides

whether any common issues predominate over issues requiring individualized proof or

permitting individualized defenses.  *Id.*

The Plaintiffs have not shown and cannot show that issues subject to generalized proof

*predominate* over individual questions.  The Plaintiffs' wage and hour claims are inherently

individual.  Each employee "has the burden of proving that he performed work for which he was

not properly compensated under the FLSA and New York labor law provisions." *Tlacoapa v.

Carregal*, 386 F.Supp.2d 362, 367 (S.D.N.Y. 2005).  This cannot be proved, as a matter of law,

on a representational basis.  As discussed above, Plaintiffs ignore that fact that each of the

grower defendants submitting this memorandum is a distinct business and cannot be assumed to

be the same as any other.  The only thing they have in common with each other is that they used

the services of Maria Garcia-Botello during various months in 2001.

Similarly, the questions relating to the MSPA are equally individual. The issue always boils down to, for example, whether a particular employee was transported by whom in what vehicle when and in what condition with what insurance.  The same applies to the housing allegations in the complaint—who owned and controlled or provided housing, to whom, for what period and was the housing inspected and properly maintained during specific periods during which it was occupied.  All of these questions are inherently individual.  In short, an examination of each cause of action element by element reveals few issues that can be resolved by generalized proof and the remaining individual clearly and totally predominate.

2.      **A Class Action Is Not A Superior Method For Resolving This Case**.

The last issue is whether a class action is a "superior" method of resolving the dispute, if any, revealed by the record. "The superiority requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 91 (S.D.N.Y. 2007).  Rule 23(b)(3) identifies several non-exhaustive factors that the Court should consider. *Id.*  A significant consideration is whether a class action would be more easily managed than other forms of adjudication.  "The Second Circuit instructs that manageability of a class action "'is always a matter of justifiable and serious concern for the trial court and peculiarly within its discretion.'" *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 174 (S.D.N.Y. 2003) (quoting *In re Visa/Mastercheck Antitrust Litig.*, 280 F.3d 124, 141 (2nd Cir. 2001)).  "[T]his consideration encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 164 (1974).

A class action is not a superior method of resolving this dispute (assuming that one can be defined).  First, a class action in these circumstances runs an unacceptably high risk of trying the grower defendants submitting this memorandum, not for their alleged transgressions, but for Maria Garcia-Botello's.  A review of the evidentiary material that Plaintiffs submitted makes this clear:  except for a brief, speculative mention of certain growers, Plaintiffs' submission is silent.  They are not silent as to Maria Garcia-Botello, but Plaintiffs' Memorandum lumps all defendants together in the civil law equivalent of guilt by association.  But guilt by association is no more acceptable in this context than it is in others.  Yet, the plaintiffs in this case offer this Court nothing more than this to support their class claims.

        **F.**      **The Plaintiffs Cannot Satisfy The Requirements For Maintaining A Fair Labor Standards Act Collective Action.**

Section 216 of the FLSA permits employees to maintain an action against an employer "for and in behalf of … themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The named plaintiffs must be "similarly situated" to the proposed members of the class.  Proposed members of the class must "opt in" with written consent in order to become party to the action.  *Id.*

A court has the discretion to order that a notice be provided to potential members to notify them that they can opt into the lawsuit.  *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989); *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997).   While a court may require a company to provide names and addresses of potential plaintiffs, the named plaintiffs must establish that they are similarly situated to the individuals for whom notice is to be provided before the case may proceed as a collective action and before notice can be provided.  *Hoffmann,* 982 F. Supp. at 261.

Plaintiffs' demand for authorization should be rejected.  First, Plaintiffs have failed to demonstrate that this Court has subject matter jurisdiction over this claim as to any of these defendants because they cannot establish standing.  *See supra,* p. 10-14.  Because the defendants filing this memorandum have submitted declarations, Plaintiffs cannot rely on the Second Amended Complaint to ground their standing and must show that they worked for any of the defendants submitting this memorandum.  Significantly, Agustin San Juan and Daniel Victoria Leon do not bring this claim and the record is therefore entirely bereft of any mention of even the name of any defendant submitting this memorandum.  Moreover, notice is futile here because the applicable limitations period has expired. "Signed consents do not relate back to the original filing date of the complaint."  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006).  The required written consent relative to events in 2001 needed to be filed no later than the end of 2004.  Any consent filed now would be untimely.[9] It would be inefficient and a waste of resources to send notices when opting in is not possible, even for the Plaintiffs.

## IV.    CONCLUSION

The defendants filing this memorandum have long pressed the Plaintiffs to show which defendants allegedly caused them harm and why they believe that an aggrieved class with the same injury exists.  Those questions are basic to any lawsuit; yet, after five years, the Plaintiffs can do no more than point to Maria Garcia-Botello, trumpet her crime, and assert that anyone who was associated with her must also be a civilly liable.  The Plaintiffs ask the Court to certify a class action to enforce that purported liability.  But guilt by association is not a basis for class certification.  Plaintiffs' motion should be denied.

---

[9]     Plaintiffs cannot take advantage of the "exceedingly narrow" doctrine of equitable tolling.  *Patraker v. Council on Env't of New York City*, 2003 WL 22703522, *2 (S.D.N.Y. 2003), because they have been represented by counsel. If they have no claims, they cannot be similarly situated to those who do.

Dated:  November 26, 2007                 Respectfully submitted,


                                          /s/ Monte B. Lake_____
                                          Monte B. Lake
                                          Wendel V. Hall
                                          Siff, Cerda, & Lake, LLP
                                          1020 Sixteenth Street, N.W., Suite 200
                                          Washington, D.C. 20036
                                          (202) 457-7770 (p)/ (202) 457-7776 (fax)
                                          mbl@scllaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2007, I electronically filed the foregoing with the

Clerk of the District Court using the CM/ECF system, which sent notification of such filing to

the following:

Richard A. Dollinger, Esq.
rdollinger@underbergkessler.com

Daniel Werner, Esq.
Workers Rights Law Center of New York, Inc.
dan@workersrightsny.org

Anita Butera, Esq.
FARMWORKER LEGAL SERVICES OF
    NEW YORK, INC.
abutera@wnylc.com

Erin Flynn Casey, Esq.
FARMWORKER LEGAL SERVICES OF
    NEW YORK, INC.
ecasey@wnylc.com

Sean Dennis Hill, Esq.
hill@hillaw.com

John J. Lavin, Esq.
jlavin@jjlavinpc.com

Melissa Giordano, Esq.
Kaye Scholer LLP
mgiordano@kayescholer.com

Shefali Kothari, Esq.
Kaye Scholer LLP
skothari@kayescholer.com

John J.P. Howley
Kaye Scholer LLP
jhowley@kayescholer.com

Angela R. Vicari
Kaye Scholer LLP
avicari@kayescholer.com

Robert C. Weissflach, Esq.
Harter, Secrest & Emery, LLP
rweissflach@hselaw.com

/s/ Wendel V. Hall
Wendel V. Hall