UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

JAVIER H., et al.,

                              Plaintiffs,

      v.                                           **DECISION AND ORDER**
                                                         02-CV-523S

MARIA GARCIA-BOTELLO, et al.,

                              Defendants.
─────────────────────────────────

## I. INTRODUCTION

In this putative class action, Plaintiffs, all seasonal or migrant farm workers, allege that Defendants violated several federal and state statutes in the course of their employment. Specifically, Plaintiffs assert claims under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") 29 U.S.C. §§ 1801, et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), the Alien Tort Claims Act ("ATCA"), the Thirteenth Amendment of the United States Constitution, and New York State Labor and contract law. Plaintiffs also assert fraud, false imprisonment, and intentional infliction of emotional distress claims. Finally, Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.

There are two distinct groups of defendants, referred to throughout this litigation as the "Contractor Defendants" and the "Grower Defendants." The Contractor Defendants – so called because they were hired or contracted to supply workers, allegedly including Plaintiffs, to the Grower Defendants' farms – include Maria Garcia-Botello, Elias Botello, Jose J. Garcia, Jose I. Garcia, and Rogelio Espinoza, the first four of whom pled guilty to

criminal charges arising from events related to this lawsuit. The Grower Defendants[1] owned or operated the farms where Plaintiffs allegedly worked. They were not charged with any crime. Presently before this Court are Plaintiffs' Motion for Class Action Certification (Docket No. 199), brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, and several Grower Defendants' motions for summary judgment. (Docket Nos. 207, 215, 216, 252.)[2] For the following reasons, each motion is denied.

## II. BACKGROUND

**A.   Facts**

This case, commenced over nine years ago, began with the actions of Maria Garcia-Botello, her sons Elias Botello and Jose J. Garcia, and her husband Jose I. Garcia. Maria Garcia-Botello was a farm labor contractor registered with the State of New York and the United States Department of Labor. (Maria Garcia-Botello Plea Agreement, Docket No. 199-3, Exhibit A.) Her business, which was run by her and her family, recruited field workers and, for a fee, provided them to farmers in Orleans and Genesee Counties in New York State. (Id.)

In July and August of 2001, Maria sent her son, Elias, to locate workers in Arizona.

---

[1] The Grower Defendants: Anthony Piedimonte, Howard Produce Sales, Inc. and Stephen Howard ("Howard"), Patsy Vignieri & Sons, Inc., David Piedmonte, DelMar Farms, Inc. and Rodney Winkstern (" Winkstern"), Ronald E. Weiler, d/b/a Ronclare Farms ("Weiler"), Bruce Kirby, Francis Domoy, James Kirby, Robert Vendetti, Penna's Farms and Nicholas Penna ("Penna"), Marky and Son's Inc., John J. Kasmer Farm, LLC and Kasmer Farm ("Kasmer Farm"), Roots Brothers Farms, Norman Farms and Jim Norman and Carolyn Norman, ("Norman"), Hearns Produce and John Hearns and Elizabeth Hearns ("Hearns"), Saffold Farms and Bill Saffold ("Saffold"), Jim Bradwell, Pickle Bob, Taylor, Gustavo, and Rodney & Sue.

[2] Two individual defendants and two groups of defendants have each moved for summary judgment separately. The groups and individuals are as follows: (1) John J. Kasmer Farm, LLC (Docket No. 207.); (2) Francis Domoy, Kirby, and Winkstern (Docket No. 215); (3) Howard, Patsy Vigneri & Sons, David Piedmont; and (4) Weiler (Docket No. 252.)

(Id.) Elias transported the workers he gathered there by van to Albion, New York and upon arrival, told them they owed anywhere from $1,000 to $1,800 for transportation costs, a sum which would be deducted from their pay. (Id.) According to Plaintiffs, all but one of them, Agustin San Juan, were among the workers Elias brought from Arizona to New York.

In fact, Elias made two trips to Arizona. (Id.) Six of the eventual plaintiffs were on the first trip: Javiar Hernandez, Hector Hernandez, Sergio Rosales Cuello, Miguel Perez, Juan Antonio Garcia, and Juventino Cazuelas. (Grand Jury Testimony of Javier Hernandez, Tr. p. 15; Grand Jury testimony of Miguel Perez, p. 4; Docket No. 205, Exhibits 9,12.) The second trip included Plaintiffs Baldemar Cacho Velez, Marcos Cacho Velez, Jonas Geronimo, and Lazaro Perez Rodriguez. (Grand Jury Testimony of Agent Kevin Ryan, p. 43; Docket No. 205, Exhibit 14.)

Once in New York, Maria and her family housed the workers in overcrowded and cramped labor camps, deducted money from their earnings for food, housing, and electricity, and told them they could not leave until they had paid all their debts. (Maria Garcia-Botello Plea Agreement.) She also warned the workers to avoid walking on public roads or talking to other people. (Id.) She further threatened them with deportation. (Id.) Although the Grower Defendants ostensibly paid the workers at legally sufficient rates, Maria cashed the checks herself, deducted pay, and only then issued earnings to the workers. (Id.) Upset with the conditions, the first group of plaintiffs who arrived on July 17, quit only 5 days later, on July 22, 2001. (Grand Jury Testimony of Miguel Perez, p. 20.) These events eventually came to the attention of law enforcement.

On December 2, 2004, after a full investigation and a grand jury indictment, Defendants Maria Garcia-Botello, Elias Botello, Jose J. Garcia, and Jose I. Garcia each

pled guilty to various criminal charges relating to this trafficking and forced labor scheme. (Plea Agreements; Docket Nos. 199-3 – 199-6, Exhibits A-D.)

Plaintiffs contend that some of the Grower Defendants (who allegedly contracted with Maria Garcia-Botello and her family) were complicit and even facilitated this scheme, while others payed Plaintiffs at rates below the legal minimum, or are otherwise liable for the actions of the Contractor Defendants as "joint-employers."

**B.     Procedural History**[3,4]

Plaintiffs commenced this action by filing a complaint in this Court on July 22, 2002 (Docket No. 1.)[5] On May 21, 2003, the United States filed a Motion to Intervene and to Stay Civil Proceedings pending the conclusion of the criminal trial. (Docket No. 40.) Magistrate Judge Schroeder denied the Motion to Intervene but stayed discovery until the resolution of the criminal case. (Docket No. 67.) On December 2, 2005, Maria Garcia-Botello, Elias Botello, Jose J Garcia, and Jose I. Garcia pled guilty to charges relating to the events described above. On June 2, 2005, Judge Schroeder vacated the stay of discovery and ordered settlement negotiations, which were ultimately fruitless. (Docket No. 74.)

Subsequently, this Court granted Plaintiffs' Motion for Leave to File a Class Certification, which Plaintiffs filed on October 26, 2007 and which is presently before this Court. (Docket No. 199.) In late 2007 and early 2008 various defendants moved for summary judgment; those motions are also presently before this Court. (Docket Nos. 207,

---

[3] Due to the long procedural history of this case, only the more significant events are highlighted here.

[4] During the pendency of this action, Defendant Philip Vigneri passed away. (Docket No. 289.)

[5] Plaintiffs amended their complaint three times, most recently on April 29, 2009. (Docket No. 277.)

215, 216, 252.) On March 30, 2009, Plaintiffs filed a motion to compel discovery, which Judge Schroeder granted in part and denied in part. Several grower defendants contend that their response to this order effectively rendered discovery complete. (Docket No. 275.) Plaintiffs, however, continue to assert that they are entitled to deposition discovery of the Grower Defendants.

### III. DISCUSSION

#### A. Class Certification

Pursuant to Fed R. Civ. P. 23(b)(2), Plaintiffs seek certification as a class of "migrant and seasonal workers who have been, are currently, or will be employed, solicited recruited, hired, furnished, or transported by Defendants at Defendants' contracting growing, packaging, packing, and/or processing operations." Additionally, Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3) for a class which they define as "all migrant and seasonal workers furnished by Contractor Defendants to the Grower Defendants between 1996 and 2001."

##### 1. Legal Standard

The underlying purpose of the class action mechanism is to foster "judicial economy and efficiency by adjudicating, to the extent possible, issues that affect many similarly situated persons." Califano v. Yamasaki, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); see also Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 349, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) ("The principal purposes of the class action procedure [are] promotion of efficiency and economy of litigation."). In pursuing these goals, a district court is afforded broad discretion in determining whether an action should be certified under

Rule 23. See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201 (2d Cir. 2008); see also 7A Charles Alan Wright et al., Federal Practice and Procedure § 1759 (3d ed. 2005). A court will engage in a "rigorous analysis" of the facts and circumstances of the case to ensure that class certification is appropriate. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160–61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

To certify a class, Plaintiffs must demonstrate that they satisfy four elements: (1) numerosity, (2) commonality, (3) typicality and (4) adequacy. Cent. States Se. and Sw. Areas Health and Welfare Fund v. Merck–Medco Managed Care, LLC., 504 F.3d 229, 244 (2d Cir. 2007) (citing Fed.R.Civ.P. 23(a)). If plaintiffs are able to satisfy all four elements of Rule 23(a), they must then demonstrate that the proposed class meets the requirements of one of the subsections of Rule 23(b). In re Salomon Analyst Metromedia Litig., 544 F.3d 474 (2d Cir. 2008) (citing Fed. R. Civ. P. 23).

A threshold inquiry in a class action suit, as in any federal suit, is whether the named plaintiffs have standing to pursue the claim. O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). "The standing requirement winnows out disputes that would be inappropriate for judicial resolution for lack of three constitutionally required elements: (1) an injury in fact (2) that is fairly traceable to the defendant and (3) that is likely to be redressed by a favorable decision." Amador v. Andrews, __ F.3d__, 2011 WL 3629717, *8 (2d Cir. Aug. 19, 2011). These requirements together constitute the "irreducible constitutional minimum" of standing, which is an "essential and unchanging part" of Article III's case-or-controversy requirement. Vt. Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). The plaintiff "bears the burden of showing that he has standing for each type of relief sought." Summers

v. Earth Island Inst., 555 U.S. 488, 129 S.Ct. 1142, 1149, 173 L.Ed.2d 1 (2009). A class action cannot be sustained without a named plaintiff who has standing. Kendell v. Emps Ret. Plan of Avon Prods., 561 F.3d 112, 118 (2d. Cir. 2009).

### 2. Plaintiffs Lack Standing

To establish standing, Plaintiffs must be able to demonstrate an injury in fact traceable to the Grower Defendants. See Amador, 2011 WL 3629717 at *8. In this case, without a showing that Plaintiffs worked on the Grower Defendants farms, Plaintiffs cannot establish standing.

At best, it is unclear where and for whom Plaintiffs worked during the relevant time period.[6] Based upon a review of their records, Defendants Domoy, Winkstern, Kirby, Root Brothers Farms, Vendetti, Broadwell, David Piedmonte, Howard, Weiler, Kasmer Farm, and Patsy Vignieri & Sons, all deny either that they contracted with Maria Garcia-Botello at the relevant time or deny that any of the named plaintiffs worked on their farms.[7] However, these contentions are complicated by Maria-Garcia Botello's alleged practice of concealing her workers true names. Plaintiffs have submitted documentation that demonstrates Maria-Garcia Botello kept two sets of names for her workers, a "check name" and a "work name." ("Daily Attendance Sheet;" Docket No. 226, Exhibit 22.) Thus, the absence or presence of a plaintiff's name on a grower defendant's payroll record is not

---

[6] All but one of the named plaintiffs brings claims arising out of events in 2001. (Third Amended Complaint; Docket No. 277.) Pursuant to this Court's order, that plaintiff, Agustin San Juan, is limited to bringing claims arising from events that took place in 2001 and October of 1999. (Decision and Order, 3/30/09, Docket No. 275.)

[7] Only Anthony Piedimonte admits that six of the named Plaintiffs appear to have worked on his farms in 2001. (Piedimonte Affidavit, ¶¶ 30-31.) But for reasons stated below, this is insufficient to establish standing.

dispositive proof that the plaintiff worked or did not work in the grower's field. These records are of little probative value.

Further, only one of the plaintiffs, Agustin San Juan, makes any assertion that he worked on the Grower Defendants farms. But San Juan appears to be distinct from the other members of the proposed class. He was not named as a victim in the criminal case, and was not among the plaintiffs who were recruited in Arizona. Unlike the other plaintiffs who worked for the Contractor Defendants for only a few weeks or less in 2001, he worked for the Contractor Defendants at varying times from 1996-2001. (Affidavit of Agustin San Juan, ¶ 3; Docket No. 199-14, Exhibit 10.) Significantly, the remaining eleven named plaintiffs are unable to say where, or for whom they worked.

Moreover, even assuming Plaintiffs worked for the Grower Defendants, their motion for certification must fail because they fail to trace any injury to the Grower Defendants' acts. See Amador, 2011 WL 3629717, *8. Plaintiffs make several allegations about their treatment as seasonal workers in the 2001 growing season, but no evidence implicates the Grower Defendants.

In fact, one piece of evidence is clear from the payroll records of the Grower Defendants whose documentation is before this Court: they payed their workers at a legal hourly rate – $5.15 per hour or more. (Anthony Piedimonte Payroll Records, Howard Payroll Records, Broadwell Timesheets, Roots Brothers Timesheets; Docket No. 226, Exhibits 23, 25, 30, 31, 33.) Although Maria Garcia-Botello admitted to cashing the paychecks, which were legally issued, and keeping some money for herself, no evidence connects Maria Garcia-Botello's illegal acts to any of the Grower Defendants. What is more, no Plaintiff states that he was harmed by any Grower Defendant, either by

insufficient payment or by any others means. The evidence before this Court derives primarily from the criminal case that focused on the actions of Maria Garcia-Botello and her family – the illegal transport from Arizona, the poor housing conditions, the threats of deportation, and the income deductions. But Plaintiffs have not provided a single piece of evidence that indicates the Grower Defendants were involved in these activities.

At this late stage of the litigation, general allegations of injury will not suffice, instead, Plaintiffs must set forth by affidavit or other evidence specific facts that establish standing. Lujan v. Defenders of Wildlife 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege *and show that they personally have been injured*. Lewis v. Casey 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (emphasis added) (quoting Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976)). Here, Plaintiffs have not set forth facts that Plaintiffs worked on the Grower Defendants' farms, nor have they shown the Grower Defendants committed any legally cognizable wrong. As such, Plaintiffs lack standing.

### 3. Plaintiffs Have Not Established a Joint-Employment Relationship That Can Confer Standing

In an effort to establish standing, Plaintiffs assert that the Grower Defendants and the Contractor Defendants are joint-employers under the AWPA and FLSA and are therefore jointly and severally liable.[8] Under these statues, an employee may

---

[8]Plaintiffs also assert standing on the "juridical links" doctrine. First proposed by the court in La Mar v. H & B Novelty & Loan Co.,489 F.2d 461 (9th Cir. 1973), the doctrine is an exception to the rule that a named plaintiff cannot represent those injured by other defendants in a class action suit. Examples of

simultaneously have two or more employers, all of whom can be held liable for violations of the statue's provisions. An entity employs a person under the FSLA if it "suffers or permits" the individual to work. 29 U.S.C § 203(g). That is, if, as a matter of "economic reality," the individual is dependent on the entity and the work performed is an integrated part of the putative employer's business. See Goldberg v. Whitaker House Co-op Inc., 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). While noting that courts are free to consider all relevant evidence, the Second Circuit suggests six factors to be weighed by courts in determining joint-employment status under the FLSA:

> (1) whether defendants' premises and equipment were used for the plaintiffs' work; (2) whether the contractor had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to defendants' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the defendants or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the putative joint-employer.

Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 69 (2d Cir. 2003).

Under the AWPA, similar factors are at issue, including whether the potential joint-employer had the power to hire and fire farm laborers and whether he had the authority to control and supervise workers' tasks. 29 C.F.R. § 500.20(h)(5)(iv)(A)-(G).

Plaintiffs make several assertions that, generally, Grower Defendants exercised

---

such juridical links include partnerships, joint enterprises, or conspiracies. However, "courts in this Circuit that have recognized the juridical link doctrine have done so only with respect to the typicality requirement of the class certification question, and have not used it as a basis to find standing." Cassese v. Washington Mut., Inc., 262 F.R.D. 179, 184 (E.D.N.Y. 2009). Therefore, even a finding that Defendants were "juridically linked," does not bestow standing on Plaintiffs.

authority over the field workers such that they should be treated as joint-employers. However, Plaintiffs make no showing that Grower Defendants exercised authority over any specific plaintiff. This is an essential element of their claim, and without it, they cannot establish standing. Although Anthony Piedimonte admits employing some of the named plaintiffs, as with the other Grower Defendants, there is no evidence that he instructed or supervised any plaintiff.

In support of their contention that Defendants are joint-employers for purposes of the FLSA and AWPA, Plaintiffs rely on Atenor v. D&S Farms, a case with similar facts. 39 F.Supp. 2d 1372 (S.D. Fla. 1999). Initially in Atenor, the district court granted summary judgment to the growers, determining that the contractor was the plaintiffs' sole employer. But the Eleventh Circuit reversed, finding that the growers and the labor contractor were joint-employers. 88 F.3d 925 (11th Cir. 1996). On remand, the growers, by summary judgment motion, argued that the plaintiffs had still not established standing. The district court disagreed, finding that there was a genuine issue of material fact regarding the farm laborers' standing. 39 F.Supp. 2d 1372.

The facts of Atenor, however, are starkly different than the facts here. In Atenor, the record was clear that the contractor worked "*exclusively* for the [Defendant] D&S farms." 39 F.Supp. 2d at 1378 (emphasis in original). Further, the plaintiffs established which crop they picked for the farmers; they identified which farms they worked on and they knew which days they worked. Id.[9] The named plaintiff even provided documentary proof linking her to the growers' farms. Id. Without this basic evidence – showing where

---

[9]The record was also clear in Atenor that the grower defendants were aware of the contractor defendants violations. See 39 F. Supp. 2d at 1379.

11

and for whom Plaintiffs worked – this Court cannot begin to undertake the analysis, detailed above, necessary to determine whether Grower Defendants were joint-employers. Therefore, Plaintiffs cannot establish standing on this ground.

Because "no class may be certified that contains members lacking Article III standing," Plaintiffs Motion for Class Certification is denied. See Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006).[10]

**B.  Discovery**

Plaintiffs seek further discovery in opposing summary judgment. As noted above, this case began almost nine years ago. Initially, discovery was to be completed by July 30, 2004. (Docket No. 38.) That deadline was stayed pursuant to Magistrate Judge Schroeder's order on September 12, 2003, which was eventually vacated on June 2, 2005 when he instructed the parties to proceed with the litigation. (Docket No. 74.) Later, Judge Schroeder ruled that all depositions were to be completed no later than June 15, 2007. (Docket No. 131.) This deadline was held in abeyance pending the resolution of Plaintiffs' Motion for Leave to File a Class Certification Motion, which was ultimately granted on September 21, 2007. (Docket No. 198.) Judge Schroeder then set a new, October 5, 2007 deadline. This appears to be the final order regarding discovery scheduling.

Plaintiffs filed a Motion to Compel Discovery on March 14, 2008. (Docket No. 246.)

---

[10] Plaintiffs also fail to establish typicality under Rule 23. Because the only evidence before the court demonstrates that the actions of the of the two groups of defendants are vastly different, and because Plaintiffs have no claims against the Grower Defendants, Plaintiffs cannot demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). For the same reasons, this action cannot be certified as a representative action under the FLSA. 29 U.S.C. § 216. Plaintiffs have not made a "factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Roebuck v. Hudson Valley Farms, 239 F.Supp. 2d 234, 238 (N.D.N.Y. 2002) (quoting Realite v. Ark Resturants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

That motion was granted in part and the defendants who were implicated by the order fully complied. To date, as far this Court can tell, no further discovery has taken place. However, Plaintiffs have fifteen notices of deposition pending.

The Grower Defendants argue that executing these depositions will be unduly expensive and ultimately futile because written discovery and their submissions pursuant to Judge Schroeder's March 30, 2009 order granting the Plaintiffs' Motion to Compel in part, conveyed all discoverable information. Plaintiffs argue deposition discovery will establish standing, and is necessary to properly oppose Defendants' motion for summary judgment.

### 1. Deposition Discovery of the Grower Defendants is Warranted, Precluding Summary Judgment.

Under Rule 56(d), if the party opposing summary judgment "shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d) (formerly Fed. R. Civ. P. 56(f) (2009)). The non-moving party must show: "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Miller v. Wolpoff & Abramson, LLP., 321 F.3d 292, 303 (2d Cir. 2003). The grant of relief pursuant to Rule 56(d) is within the discretion of the district court. See U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 995 F.2d 375 (2d Cir. 1993).

By affidavit dated January 11, 2008 (Docket No. 225), Plaintiffs have satisfied this burden. Among other pieces of information, Plaintiffs indicate that discovery may reveal: which Plaintiffs, if any, worked on which Grower Defendants' property; the relationship between the Grower Defendants and the Contractor Defendants; and the Grower Defendants awareness of the Contractor Defendants' illegal activity. Such information is "material to the opposition of the summary judgment motion" and would certainly be relevant to Plaintiffs claims and defenses. Sage Realty Corp. v. Ins. Co. of N. Am., 34 F.3d 124, 128 (2d Cir. 1994). Further, depositions are reasonably calculated to lead to the discovery of admissible evidence. Fed R. Civ. P. 26(b)(1). Plaintiffs have also demonstrated that at least some of the grower defendants have objected to deposition discovery, thus impeding plaintiffs ability to go forward and satisfying the fourth prong of the analysis. See Miller, 321 F.3d, at 303.

Moreover, further discovery is warranted because the evidence demonstrates that the names on the Grower Defendants' payroll records may not accurately reflect the identity of the workers ("Daily Attendance Sheet") and further discovery may clarify some of this confusion. These records, which make up a significant portion of the current discovery materials, may also be incomplete or inaccurate for other reasons, including Maria Garcia-Botello's practice of providing false names to the Grower Defendants. (Grand Jury Testimony of Joseph O'Connor and Kevin Ryan, Docket No. 226, Exhibits 17,18.) Additional discovery may also shed some light on the issues surrounding Defendants' statues of limitation arguments.

"Summary judgment should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to

14

which it has the burden of proof." Miller, 321 F.3d at 303 (emphasis in original; citations and internal quotations omitted). Due to the inaccuracies and omissions in the record and the importance of this documentation to Plaintiffs' case, a summary judgment ruling at this time would be premature and improvident. Accordingly, all summary judgment motions are denied without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification is denied. Further, Grower Defendants' Motion for Summary Judgment is denied without prejudice.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for Class Certification (Docket No. 199) is DENIED.

FURTHER, Defendant John J . Kasmer Farm, LLC's Cross-Motion for Summary Judgment (Docket No. 207) is DENIED without prejudice.

FURTHER, Defendants Bruce Kirby, James Kirby, and Rodney Winkstern's Cross-Motion for Summary Judgment (Docket No. 215) is DENIED without prejudice.

FURTHER, Defendants Howard Produce Sales, Inc., Stephen Howard, Patsy Vigneri & Sons Inc., and David Piedmonte's Cross-Motion for Summary Judgment (Docket No. 216) is DENIED without prejudice.

FURTHER, Defendant Ronald E. Weiler's Cross-Motion for Summary Judgment (Docket No. 252) is DENIED without prejudice.

FURTHER, the parties are instructed to contact Magistrate Judge Schroeder to set

up a status conference and discuss discovery scheduling.


      SO ORDERED


Dated:  September 11, 2011
         Buffalo, New York

                                    <u>/s/William M. Skretny</u>
                                WILLIAM M. SKRETNY
                                      Chief Judge
                              United States District Court