UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAVIER HERNANDEZ, *ET AL.*,

        PLAINTIFFS,

                v.

MARIA GARCIA-BOTELLO, *ET AL.*,

        DEFENDANT.

MEMORANDUM OF LAW
IN SUPPORT OF JOINT MOTION TO
APPROVE SETTLEMENT

CIVIL ACTION NO.:
02-CV-0523 (S)(SR)

---

### PRELIMINARY STATEMENT

Plaintiffs commenced this putative class/collective action in July 2002 against two groups of defendants ("Contractor Defendants" and "Grower Defendants") alleging, *inter alia*, violations of various Federal and New York State wage and hour laws. In 2007, Plaintiffs moved to certify this action as a class and collective action, on behalf of themselves and other similarly situated individuals. On September 14, 2011, the Court denied Plaintiffs' Motion for Class Certification.

Mediation discussions in January and February 2012 resulted in a tentative settlement agreement. Efforts were undertaken thereafter to locate the twelve named Plaintiffs, resulting in one being dismissed in September 2012 pursuant to a Suggestion of Death. Ultimately, the specific terms and conditions of the settlement were reduced to writing in a Settlement Agreement and Release of Claims ("Settlement Agreement"). *See* Weissflach Decl., Exh. A. The parties now respectfully request that the Court approve the Settlement Agreement as fair, adequate and reasonable, including but not limited to the provisions for attorney's fees and costs.

<u>STATEMENT OF FACTS</u>

**I.     Procedural History**

On July 22, 2002, Plaintiffs commenced this action against two distinct groups of defendants - "Contractor Defendants" and "Grower Defendants."  Plaintiffs are individual farm workers who allegedly worked in New York.  The Contractor Defendants allegedly hired or contracted to supply workers, including Plaintiffs, to work for the Grower Defendants' respective farms.

Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), Migrant and Seasonal Agricultural Worker Protection Act ("MSPA"), Racketeer Influenced and Corrupt Organizations Act ("RICO"), New York Contract Law, New York Labor Law, Fraud, False Imprisonment, Intentional Infliction of Emotion Distress, and Assault.  *See* Weissflach Decl., Exh. B (Third Amended Complaint).

In 2007, Plaintiffs sought to certify this action as a class and collective action, on behalf of themselves and other similar situated individuals.  On September 14, 2011, the Court denied Plaintiffs' Motion for Class Certification on the ground that Plaintiffs lacked standing because they did not set forth facts showing that they worked on Grower Defendants' farms.  Dkt. 293.

Thus, the case has proceeded since September 2011 with respect to the remaining individual Plaintiffs only.  By Order dated September 14, 2012 (Dkt. 311), the Court dismissed the claims of Plaintiff Sergio Rosales Cuellos pursuant to a suggestion of death that had been filed more than 90 days earlier.

On November 23, 2011, the Court issued an Order referring this action to mediation.  Dkt. 300.  The parties mediated this dispute in January and February 2012, before a mutually selected mediator, Sharon M. Porcellio, Esq.  In addition to participating in an in-person

mediation session, counsel for the parties, with the meditator's assistance, also engaged in arm's length negotiations by telephone and electronic mail. As a result of their mediation efforts, the Plaintiffs and the Grower Defendants have mutually agreed to resolve this lawsuit on the terms and conditions set forth in the Settlement Agreement.[1]

## II.     Settlement Terms

The Plaintiffs and the Grower Defendants have agreed, without any admission of liability or wrongdoing whatsoever, to settle all of the claims in this lawsuit as brought against the Grower Defendants. The settlement provides for the payment of Ten Thousand Dollars ($10,000) to each "eligible" Plaintiff by the Grower Defendants. This payment is a single payment from Grower Defendants *collectively*, not a payment from each Grower Defendant. Settlement Agreement, § 1(a).

Because the parties anticipated some difficulty finding the remaining individual Plaintiffs for purposes of finalizing this settlement, the parties agreed that to be "eligible" for this payment, each Plaintiff was required to execute a copy of the Settlement Agreement prior to February 28, 2013, and Plaintiffs' counsel was required to provide copies thereof to Grower Defendants' counsel on or before March 15, 2013. Settlement Agreement, § 1(b). The parties agreed that any Plaintiffs who failed to meet this requirement would have their claims dismissed with prejudice as brought against the Grower Defendants. Settlement Agreement, § 1(c).

Ten (10) Plaintiffs met the signature requirement and are eligible to receive the payment set forth in the Settlement Agreement. *See* Weissflach Decl., Exh. A (signed Settlement Agreement). Plaintiff Lazaro Perez Rodriguez's signature was not obtained by the required deadline.

---

[1]  The Contractor Defendants had no role in the above-referenced mediation and are not a party to the Settlement Agreement.

The Settlement Agreement also requires the Grower Defendants to pay Plaintiffs' portion of the Mediator Fee that was not waived by the Court (Dkt. 306).  Settlement Agreement, § 1(e).

Additionally, the Settlement Agreement provides for the payment of Fifty Thousand Dollars ($50,000) in attorney's fees and costs associated with this lawsuit to the Worker Justice Center of New York, Inc.  Settlement Agreement, § 1(d).

The payments referenced above (payments to Eligible Plaintiffs, the mediation fee payment, and the attorney's fee/cost payment) are the only payments to be made by Grower Defendants in settlement of any and all claims made against them in this lawsuit.

In exchange for the Grower Defendants' agreement to settle the lawsuit on the terms described above, Plaintiffs agreed to a complete waiver and release of claims against the Grower Defendants.  Settlement Agreement, § 2.  Additionally, because the Contractor Defendants will remain in the lawsuit as defendants after the dismissal with prejudice of all claims against all Grower Defendants, the parties agreed to a protective order to be entered prohibiting further discovery, legal process or proceedings in this lawsuit regarding the Grower Defendants.  Settlement Agreement, § 3.  Without this protective order, the Grower Defendants would not receive the benefit of this settlement, which is the conclusion of this litigation as brought against them.

The Settlement Agreement also contains provisions for Confidentiality (§ 4), Court Approval (§ 5), Non-Admission (§ 6), Understanding and Translation of Terms (§ 7), Voluntary Agreement (§ 8), and other provisions typical in such agreements (§§ 9-16).

## ARGUMENT

Court approval for FLSA settlements is required in the absence of the direct supervision of the United States Secretary of Labor.  *See* 29 U.S.C. § 216(c); *Sampaio v. Boulder Rock Creek Developers, Inc.*, 2007 U.S. Dist. LEXIS 66013, at *1 (E.D.N.Y. Sept. 6, 2007).  Even though this action was never certified as a collective action, it is nevertheless subject to the Court's approval.  *See id.*

Courts approve FLSA settlements when they are reached as a result of a contested litigation to resolve *bona fide* disputes.  *Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067 at *19 (E.D.N.Y. Jan. 20, 2010) (citing *Lyon's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Khait*, 2010 U.S. Dist. LEXIS 4067 at *19.  As stated by the District Court in *Khan*, "[i]f the proposed settlement reflects a reasonable compromise over contested issues," the court should approve the settlement.  *Khait*, 2010 U.S. Dist. LEXIS 4067, *19; s*ee also* 29 U.S.C. § 216(b); *Manning v. New York Univ.*, 2001 U.S. Dist. LEXIS 12697, *35 (S.D.N.Y. Aug. 21, 2001) (recognizing that the Supreme Court has allowed an FLSA settlement for unpaid wages or overtime pursuant to a judicially-supervised stipulated settlement), *aff'd,* 299 F.3d 156 (2d Cir. 2002); *Sampaio v. Boulder Rock Creek Developers, Inc.,* 2007 U.S. Dist. LEXIS 66013, *3 (E.D.N.Y. Sept. 6, 2007) (same).

In the instant case, there is no doubt that for more than ten years this lawsuit has been both contested and the result of a *bona fide* dispute.  Indeed, there are material issues that remain unresolved between the parties.  For example, the parties have divergent views as to whether Plaintiffs actually worked for Grower Defendants, the time periods involved, whether any wage

and hour violations occurred, and the calculation of Plaintiffs' alleged damages. These factors weigh heavily in favor of approving the instant settlement.

After many years of vigorous litigation, including engaging in meaningful discovery and motion practice, this case was finally resolved through arm's length negotiations by competent counsel, with the assistance of an experienced mediator. Thus, the settlement agreed to by the parties, including the provisions regarding attorneys' fees, is fair and reasonable. *See, e.g., Elliot v. Leatherstocking Corp.*, 2012 U.S. Dist. LEXIS 171443 (N.D.N.Y. Dec. 4, 2012) ("Arm's length negotiations involving counsel and a mediator raise the presumption that a settlement meets the required needs of due process.")

The Second Circuit has held that a district court's approval of a settlement that is within a "range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion" will not be reversed on appeal. *Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Additionally, in *City of Detroit v. Grinnell Corp.*, the Second Circuit noted, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." 495 F.2d 448, 455 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48 (2d Cir. 2000). The Court further noted, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2. Accordingly, the settlement amount agreed to by the parties herein is fair and reasonable under the circumstances of this case, particularly when the Plaintiffs' very standing remains in doubt and subject to discovery.

Furthermore, the parties' agreement regarding fees, costs and expenses is reasonable. When a statute, such as the FLSA, provides for attorneys' fees, the Supreme Court has expressed a preference that the parties agree to the amount of the fee. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.") Accordingly, as part of the settlement, the parties reached an agreement on payment of attorneys' fees, costs and expenses in the amount of Fifty Thousand Dollars ($50,000). *See* Weissflach Decl., Exh. A, § 1(d).

In the Second Circuit, a court may analyze a fee agreement "under either the 'lodestar' method or the 'percentage of the fund' method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d. Cir. 2005). In this case, the agreed settlement on attorneys' fees, expenses and costs of Fifty Thousand Dollars ($50,000) represents 33% of the total settlement amount of One Hundred Fifty Thousand Dollars ($150,000). This percentage is well within the range of percentages commonly approved by courts within this Circuit and across the country. *See Klein v. PDG Remediation, Inc.*, 1999 U.S. Dist. LEXIS 650, at *11 (S.D.N.Y. Jan. 28, 1999) (stating that "33% of the settlement fund … is within the range of reasonable attorney fees awarded in the Second Circuit"); *see also Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) ("courts have routinely awarded attorney fees ranging from 25% to 36% of a common fund under the percentage-of-the-fund method"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (settlement providing for award of attorney's fees equivalent to 33% of total recovery deemed fair and reasonable).

Accordingly, the parties' agreement regarding the payment of fees and costs is reasonable and should not be disturbed.

## CONCLUSION

Based on the foregoing, the parties respectfully request that the Court grant their Joint Motion to Approve the Settlement Agreement as fair, reasonable, and adequate.

DATED:   Buffalo, New York
         March 29, 2013

/s/  Robert C. Weissflach, Esq.
HARTER SECREST & EMERY LLP
*Attorneys for Defendants*
   *John J. Kasmer, LLC and*
   *John J. Kasmer Farm, LLC*
Twelve Fountain Plaza, Suite 400
Buffalo, New York 14202
Telephone:  (716) 844-3707
Email:  rweissflach@hselaw.com